ROSS REALTY COMPANY v. FIRST CITIZENS BANK & TRUST COMPANY, AS TRUSTEE OF THE PROFIT SHARING RETIREMENT PLAN AND TRUST OF THERMO INDUSTRIES, INC. AND AFFILIATED COMPANIES

No. 93

(Filed 4 January 1979)

**Mortgages and Deeds of Trust § 32.1— purchase money deed of trust—statute abolishing deficiency judgment—prohibition of action on note**

G.S. 45-21.38 not only abolishes deficiency judgment after foreclosure of a purchase-money mortgage or deed of trust but also prohibits a suit upon a purchase-money note without foreclosure of the mortgage or deed of trust securing the note.

Justice BROCK took no part in the consideration or decision of this case.

ON petition for discretionary review of the decision of the Court of Appeals (37 N.C. App. 33) which affirmed the judgment of *Griffin, J.*, entered at the 8 August 1977 Session of MECKLEN-BURG Superior Court.

Plaintiff instituted this action to recover from defendant $106,601.86 plus interest, the amount allegedly due on a promissory note executed by defendant in favor of plaintiff. In its answer defendant admitted execution of the note but alleged that it was given to secure the balance of the purchase price of real estate and that defendant had offered to reconvey the real estate to plaintiff.

Pursuant to stipulations entered into between the parties, the trial court found facts summarized in pertinent part as follows:

(1) Plaintiff is a corporation organized and existing under the laws of the State of North Carolina with its office and principal place of business in Mecklenburg County. Defendant is a North Carolina banking corporation having an office in Mecklenburg County. Defendant is trustee of the Profit Sharing Retirement Plan and Trust of Thermo Industries, Inc., and affiliated companies.

(2) By deed dated 25 March 1974 and duly recorded on 19 June 1974 in Mecklenburg County Registry, plaintiff conveyed to defendant certain real estate located in the City of Charlotte. As

part of the purchase price for said real estate, defendant executed under seal a note for the balance of the purchase price for said real estate, payable to the order of plaintiff, in the amount of $126,000. Said note provided by its terms that it was for the balance of purchase money on real estate.

(3) To secure plaintiff seller the payment of the balance of said purchase price, a purchase money deed of trust conveying said real estate as security for payment of said note was executed by defendant; said deed of trust is dated 1 April 1974 and was duly recorded in Mecklenburg County Registry on 19 June 1974. F. T. Miller, Jr., is named trustee in said deed of trust which by its terms provides that it secures a note which is for the balance of the purchase money of the real estate.

(4) Defendant failed to make the payment which was due on 1 October 1976 and refuses to make any further payments on the note aforesaid. Plaintiff is still the owner and holder of the note and deed of trust aforesaid.

(5) Prior to the commencement of this action defendant tendered to plaintiff, in lieu of foreclosure, a deed to convey to plaintiff all the interests of defendant in the real estate embraced in the deed of trust.

(6) Plaintiff refused to accept the deed offered in lieu of foreclosure.

(7) Said note and deed of trust were given as payment for and security for the balance of the purchase price of the real estate referred to in the deed and deed of trust aforesaid.

The trial court concluded as a matter of law that the provisions of G.S. 45-21.38 are inapplicable to the subject matter of this action; that this action was brought solely to effect collection of the balance due on a purchase money note without recourse to or foreclosure of the deed of trust securing the same; that G.S. 45-21.38 "abolished deficiency judgments arising out of the sale of real property securing a balance purchase money note; however, in this case, such security was abandoned, resulting in there being no foreclosure and no sale of said real estate".

The court rendered judgment against defendant for the amount prayed and defendant appealed.

*Ragsdale & Kirschbaum, by William L. Ragsdale, for defendant appellant.*

*Miller, Johnston, Taylor & Allison, by John B. Taylor and James W. Allison, for plaintiff appellee.*

*Weinstein, Sturges, Odom, Bigger, Jonas & Campbell, by Maurice A. Weinstein, T. LaFontine Odom and L. Holmes Eleazer, Jr., Amicus Curiae Brief, for Henderson Belk.*

*Seay, Rouse, Johnson & Harvey, by James L. Seay and Ronald H. Garber, and Sanford, Adams, McCullough & Beard, by J. Allen Adams, E. D. Gaskins, Jr., and Catharine B. Arrowood, Amicus Curiae Brief, for Lee A. Debnam and Algie Stephens.*

BRITT, Justice.

Defendant contends the Court of Appeals erred in affirming the trial court's conclusion of law that the provisions of G.S. 45-21.38 are inapplicable to the subject matter of this action and in entering judgment based on that conclusion. We think the contention has merit.

G.S. 45-21.38 provides in pertinent part as follows:

> "Deficiency judgments abolished where mortgage represents part of purchase price.—In all sales of real property by mortgagees and/or trustees under powers of sale contained in any mortgage or deed of trust executed after February 6, 1933, or where judgment or decree is given for the foreclosure of any mortgage executed after February 6, 1933, to secure to the seller the payment of the balance of the purchase price of real property, the mortgagee or trustee or holder of the notes secured by such mortgage or deed of trust shall not be entitled to a deficiency judgment on account of such mortgage, deed of trust or obligation secured by the same: Provided, said evidence of indebtedness shows upon the face that it is for balance of purchase money for real estate . . . ."

Decision in this case depends upon the interpretation or construction of the quoted statute. "In the interpretation of statutes, the legislative will is the all-important or controlling factor. Indeed, it is frequently stated in effect that the intention of the

legislature constitutes the law. Accordingly, the primary rule of construction of statutes is to ascertain and declare the intention of the legislature, and to carry such intention into effect to the fullest degree. A construction adopted should not be such as to nullify, destroy, or defeat the intention of the legislature." 73 Am. Jur. 2d, Statutes § 145, p. 351.

Through the years this court has adhered to the principle that the legislative intent is a controlling factor in the construction of statutes. "The object of all interpretations of statutes is to ascertain the meaning and intention of the Legislature . . . ." *Kearney v. Vann*, 154 N.C. 311, 70 S.E. 747 (1911). *Accord: State v. Hart*, 287 N.C. 76, 213 S.E. 2d 291 (1975); *Underwood v. Howland*, 274 N.C. 473, 164 S.E. 2d 2 (1968); *Freeland v. Orange County*, 273 N.C. 452, 160 S.E. 2d 282 (1968); *Buck v. Guaranty Company*, 265 N.C. 285, 144 S.E. 2d 34 (1965); *Canteen Service, Inc. v. Johnson*, 256 N.C. 155, 123 S.E. 2d 582, 91 A.L.R. 2d 1127 (1962); *Mullen v. Town of Louisburg*, 225 N.C. 53, 33 S.E. 2d 484 (1945); *In Re Steelman*, 219 N.C. 306, 13 S.E. 2d 544 (1941); *Branch Banking and Trust Company v. Hood*, 206 N.C. 268, 173 S.E. 601 (1934); *Hunt v. Eure*, 188 N.C. 716, 125 S.E. 484 (1924); *State v. Burnett*, 173 N.C. 750, 91 S.E. 597 (1917); *Abernethy v. Board of Commissioners*, 169 N.C. 631, 86 S.E. 577 (1915); *McLeod v. Board of Commissioners*, 148 N.C. 77, 61 S.E. 605 (1908); *Blair v. Coakley*, 136 N.C. 405, 48 S.E. 804 (1904).

In *State v. Bell*, 184 N.C. 701, 705, 115 S.E. 190 (1922), this court in construing a statute relating to the abandonment of children said: "In our endeavor to ascertain the purpose of the statute, we should also have due regard to the rule that the spirit and reason of the law shall prevail over its letter, especially where a literal construction would work an obvious injustice. (Citations.)"

In *Board of Education v. Dickson*, 235 N.C. 359, 361, 70 S.E. 2d 14 (1952), this court, speaking through Ervin, J., in construing certain statutes relating to the employment of school principals, said: ". . . No good purpose will be served by setting forth verbatim the somewhat awkward language in which these enactments are couched. Their meanings are to be found in what they necessarily imply as much as in what they specifically express. 50 Am. Jur., Statutes, section 242."

While the statute now codified as G.S. 45-21.38 is not artfully drawn, we think the manifest intention of the Legislature was to limit the creditor to the property conveyed when the note and mortgage or deed of trust are executed to the seller of the real estate and the securing instruments state that they are for the purpose of securing the balance of the purchase price.

We have found very helpful an article (cited in the *Amicus* briefs) by Professors Brainerd Currie and Mark S. Lieberman appearing in the 1960 Duke Law Journal, pages 1 *et seq.* We quote a portion of the article:

"Nothing in the way of conventional legislative history is available to shed light on the purpose of the legislation. There are no committee reports and no record of the legislative debates; even contemporary editorial comment is lacking. We are not, however, entirely without evidence on which to base a judgment. The year 1933 was one of deep depression, and North Carolina, along with other states, was concerned with the economic distress associated with wholesale mortgage foreclosures. The act which has been quoted — chapter thirty-six of the Laws of 1933 — was the first in a series of legislative attempts at the same session to deal with the mortgage problem. It was enacted on February 6. On February 9, the legislature approved a joint resolution requesting a voluntary moratorium until November 1, 1934, on all principal payments secured by mortgages on farm lands and homes, so long as interest and taxes were paid. On April 18, chapter 275 was enacted, dealing rather comprehensively with the foreclosure problem. Section one empowered the courts, prior to confirmation of any foreclosure sale of real estate, to enjoin the sale or its confirmation on the ground that the amount bid or price offered was inadequate and inequitable and would result in irreparable damage. Section two authorized the courts, prior to confirmation, to order resale upon such terms as might be just and equitable. Section three provided that in suits for deficiency judgments after the exercise of a power of sale, the mortgagor, if the holder of the obligation was the purchaser at the sale, could defend by showing that the property was fairly worth the amount of the debt secured by it at the time and place of sale. All of these provisions applied to existing mortgages;

they included, without being limited to, purchase-money mortgages. On May 15, the time within which actions for deficiencies might be brought was limited to one year from the date of sale." Currie and Lieberman, *Purchase-Money Mortgages and State Lines: A Study in Conflict-of-Laws Method,* 1960 Duke Law Journal 1, 11-12.

Most of the enactments mentioned now appear in Chapter 45, Article 2B of the General Statutes. The writers of the article concluded, among other things, that the 1933 General Assembly intended to protect vendees from oppression by vendors and mortgagors from oppression by mortgagees. Moreover, the authors examined the specific problem which this court confronts in the case *sub judice.*

"[T]he legislature was concerned about the situation in which the vendor finances the sale, and was particularly concerned for the protection of the purchaser in that situation. The question may well be asked: If that was the purpose, why confine the remedial statute to deficiency judgments when the mortgagee could inflict substantially the same injury on the mortgagor simply by suing on the personal obligation. . . . The only answer is simply that legislatures do not always see the whole problem, and are not always astute to close all the loopholes. The evidence is strong that the legislature wanted to furnish protection to the purchaser where the vendor did the financing. The only alternative possibility is that there was something distasteful about the action to recover a deficiency under a purchase-money mortgage, as an action, which was not shared by actions on personal obligations, suits for specific performance, and actions to recover mortgage deficiencies brought by third-party mortgagees. This is manifestly absurd. . . . [T]he policy was one of protecting the purchaser where the vendor did the financing; the North Carolina legislature simply did not do an efficient job of insuring the effectiveness of the policy." *Id.* at 23-24.

Where the Legislature has enacted a statute to achieve a specific aim, it is incumbent upon the court to construe the statute in a manner which effectuates that legislative purpose. In *Underwood v. Howland, supra* at 478, in an opinion by Huskins, J., this court said:

"Furthermore, '. . . where a strict literal interpretation of the language of a statute would contravene the manifest purpose of the Legislature, the reason and purpose of the law should control, and the strict letter thereof should be disregarded. [Citations omitted.]' "

Plaintiff relies very heavily on the opinion in *Page v. Ford*, 65 Or. 450, 131 P. 1013 (1913). Plaintiff correctly states that the Oregon court, construing an anti-deficiency statute similar if not identical to ours, held that their statute—literally construed—did not prevent the holder of a note given for the purchse price of the land, and secured by a mortgage, from disregarding the mortgage and bringing an action for personal judgment on the note. Plaintiff has urged us to construe G.S. 45-21.38 similarly, but this we refuse to do.

We do not attempt to distinguish our statute from that of Oregon, nor the facts in this case from those before the court in *Page*. We note only that the Oregon court, using the same approach to statutory construction employed by the Court of Appeals in its consideration of this case, mechanically construed the language of the statute while failing to attempt to determine the purpose which the Legislature sought to accomplish. We feel compelled to follow the long tradition of this court which is to ascertain, if possible, the intent of our Legislature in interpreting statutes and to respect the rule "that the spirit and reason of the law shall prevail over its letter."

Our conclusion that the Legislature did not intend to allow suit upon the note in purchase-money mortgage situations is also buttressed by what appears to have been the only contemporary commentary on the statute. In an article written by members of the faculty of the U.N.C. Law School a brief summary of the statute is followed by this observation: "The effect of this (the statute) is to limit the creditor to the property conveyed, when for the purchase money, changing in that respect the present statute. This applies only to such contracts as are made after the ratification of the Act, Feb. 6, 1933." *A Survey of Statutory Changes in North Carolina in 1933*, 11 N.C. Law Rev. 191, 219 (1933).

Furthermore, the procedure attempted by plaintiff in the case at hand would circumvent the spirit and purpose of the

statute in question. The Court of Appeals acknowledges in its opinion that its literal construction of the statute creates an "anomalous situation" which enables a creditor to easily evade the effect of the statute. After obtaining judgment on a note, a plaintiff could foreclose the deed of trust, apply the proceeds from the sale to the judgment, and then proceed with execution against the judgment debtor's general assets. Or, a plaintiff could ignore the deed of trust and proceed with execution against the judgment debtor's assets including the real estate covered by the deed of trust. Clearly, the General Assembly did not intend to allow such circumvention.

In the recent case of *State v. Shook*, 293 N.C. 315, 317, 237 S.E. 2d 843 (1977), this court, in an opinion by Exum, J., construing G.S. 15A-943(b), said:

> "We must, of course, construe the meaning of the statute in accordance with the ascertainable intent of the legislature. *In re Arthur*, 291 N.C. 640, 231 S.E. 2d 614 (1977); *Stevenson v. City of Durham*, 281 N.C. 300, 188 S.E. 2d 281 (1972). In construing a statute to determine its legal effect, we may infer the legislative intent by looking to the purpose of the statute, the evils which it is designed to remedy and the effects of alternative constructions. *In re Arthur, supra.*"

Having in mind the purpose for which G.S. 45-21.38 was adopted, the perceived problem which the statute seeks to remedy, and the effect which a literal construction of the statute produces, we are compelled to construe the statute more broadly and to conclude that the Legislature intended to take away from creditors the option of suing upon the note in a purchase-money mortgage transaction. This construction of the statute not only prevents its evasion, but also gives effect to the Legislature's intent.

Finally, plaintiff argues that a ruling against it in this case would place sellers of real estate at a serious disadvantage in the present-day market place. This argument is not persuasive. The seller still has the prerogative of determining the amount of the down payment as well as the amounts and due dates of the future payments; in case of default the seller gets the land back while the purchaser loses his down payment and any other payments made on the purchase price.

For the reasons stated, the decision of the Court of Appeals is reversed and this cause is remanded to that court who will order the judgment appealed from reversed and vacated.

Reversed.

Justice BROCK took no part in the consideration or decision of this case.