**In the Matter of GULLEDGE, Ronald and Gulledge, Gail, Debtors.**

**In the Matter of JONES, Wilbert and Jones, Thelma, Debtors.**

Bankruptcy Nos. B–78–00698(WE), B–78–00699(WE), B–79–00727(WE) and B–79–00728(WE).

United States Bankruptcy Court, M. D. North Carolina.

Jan. 28, 1982.

**312**

Elisabeth S. Petersen, Durham, N. C., for debtors Gulledge.

John A. Northen, Northen, Little & Bagwell, Chapel Hill, N. C., for debtors Jones.

C. Horton Poe, Jr., Durham, N. C., for claimant.

Richard M. Hutson, II., Mount, White, King, Hutson, Walker & Carden, P.A., Durham, N. C., standing trustee.

## MEMORANDUM ORDER

JAMES B. WOLFE, Jr., Bankruptcy Judge.

These matters come before this Court upon the objections of both sets of Debtors to the unsecured claims of Standard Construction Company. Each of the matters presents essentially identical facts and issues. Accordingly, this Court heard these matters together and now enters this joint Order.

## I. FINDINGS OF FACT

A. *Ronald and Gail Gulledge.*

On December 19, 1975, the Gulledges purchased a home from Standard Construction Company. To finance the purchase of this home, the Gulledges executed two notes and two deeds of trust.

The first note and deed of trust were executed to the Citizens Savings and Loan Association of Rocky Mount, North Carolina, on December 19, 1975. This first deed of trust was recorded on December 22, 1975.

On that same day, December 19, 1975, the Gulledges executed a second note and deed of trust. The note is payable to the "Holder of Note". The second deed of trust, benefitting the "Holder of Note", was not recorded until November 26, 1976.

On June 9, 1978, the Gulledges filed a Chapter XIII petition. Their confirmed plan provided that the payments for the debts secured by the first and second deeds of trust would be paid directly to the creditors.

On March 23, 1981, this Court ordered that the stay and Restraining Order be modified to permit Citizens Savings and Loan Association to foreclose upon the Gulledges' real property. The foreclosure was held, deriving an amount equal to that amount secured by the first deed of trust held by Citizens Savings and Loan Association.

Receiving no money from the foreclosure, Standard Construction Company filed a claim for the balance due under the second deed of trust on August 21, 1981. This claimant acknowledges being the "Holder of Note".

B. *Wilbert and Thelma Jones.*

On August 25, 1976, the Joneses purchased a home from Standard Construction Company. As in the case recounted above, this purchase was financed by two sets of notes and deeds of trust.

The first note and deed of trust, executed on August 25, 1976, benefitted Mechanics and Farmers Bank. This first deed of trust was recorded on August 30, 1976.

On the day of the purchase, August 25, 1976, the Joneses executed a second note and deed of trust. The note is payable to

the "Holder of Note". The Deed of Trust, again benefitting "Holder of Note", was not recorded until October 21, 1976.

On April 19, 1979, the Joneses filed a Chapter XIII petition. Here again, their confirmed plan provided the payments for the debts secured by the first and second deeds of trust were to be paid directly to the creditors.

On June 4, 1981, this Court ordered that the stay and Restraining Order protecting this real property be modified to allow the holder of the first deed of trust to foreclose on the real property.

On August 21, 1981, Standard Construction Company as the "Holder of Note", representing that the balance due under the second deed of trust had not been paid by the foreclosure, filed a claim for that amount. However, the foreclosure sale of the Joneses' real property was not held until November 13, 1981. At the eventual sale, the amount derived equalled that amount due to the first deed of trust holder.

Both sets of Debtors objected promptly to the unsecured claims filed by Standard Construction Company. These matters came on for hearing and with the consent of all parties were heard together by this Court on December 8, 1981.

## II. DISCUSSION AND CONCLUSIONS OF LAW

Attorneys for both sets of Debtors have presented a variety of arguments for the denial of Standard Construction Company's unsecured claims. Incorporating each others' arguments, attorneys for the Debtors submit that the claimant's unfair and deceptive business practices violate N.C.Gen. Stat. § 14–100; that the claimant's failure of consideration at the sale of the property bars the validity of the note it now seeks to enforce; and that N.C.Gen.Stat. § 45–21.-38, North Carolina's anti-deficiency statute, bars the claim. In addition, the Joneses argue that the claim, filed months before the foreclosure, should be denied as a false claim since it was filed prematurely.

Notwithstanding the merit of any alternative arguments, this Court reaches its decision solely on the basis of North Carolina's anti-deficiency statute, N.C.Gen.Stat. § 45–21.38, as this statute conclusively disposes of all issues raised in the objections.

Both the Gulledges' and the Joneses' wage earners plans are governed by the Bankruptcy Act. Section 643 of the former Act allows only those claims which are provable under Section 63 to be administered under a wage earners plan. 11 U.S.C. § 1044 (1976) (repealed 1978). Section 63 disallows claims which are not enforceable under the applicable State law. 11 U.S.C. § 103 (1976) (repealed 1978). Accordingly, this Court must adhere to North Carolina law in determining whether Standard Construction Company's claims for deficiencies following the foreclosure of these properties are enforceable. See 3A *Collier on Bankruptcy,* ¶ 63.07 (14th ed. 1979).

North Carolina's anti-deficiency statute prohibits a seller of real property who financed any part of the purchase price of the property from collecting a deficiency judgment following a foreclosure upon the property. N.C.Gen.Stat. § 45–21.38. The North Carolina General Assembly, enacting the statute in 1933, sought to protect the purchaser of real property in those instances where the seller also financed the sale. *Realty Co. v. Trust Co.,* 296 N.C. 366, 250 S.E.2d 271 (1979). In accordance with the legislature's objective, it is the express policy of North Carolina courts to construe the statute broadly and, upon the purchaser's default, to limit the recovery of the seller of real property who finances the sale to the proceeds derived from a foreclosure of the real property. *Id.* Thus, if the statute applies under the circumstances presented by these cases then the claimant, as the seller of the real property, is limited to that property and its claims for deficiencies are not enforceable.

The basic facts supporting the statute's application in both cases are not in question. The claimant sold the homes to the Debtors and financed a portion of the purchase price. The deeds of trust, executed

on the date of purchase, were recorded months after the purchase and are second liens on the homes. Upon default, the holders of the first deeds of trust foreclosed. The claimant's liens were not satisfied by the proceeds of the foreclosure sales. Nevertheless, the claimant argues that the anti-deficiency statute should not be applicable.

Clearly, the deeds of trust in question qualify as purchase money deeds of trust under N.C.Gen.Stat. § 45–21.38. Executed and delivered by the Debtors to the claimant on the date the Debtors purchased their homes from the claimant, these deeds of trust were a part of the purchase transactions. Delivered to the claimant to secure payment in accordance with the terms of the notes simultaneously extended, these deeds of trust secure part of the purchase prices. Encumbering the real property purchased, these deeds of trust embrace only that property purchased by the Debtors from the claimant. Thus, all the indicia of purchase money deeds of trust are present. *See Dobias v. White*, 239 N.C. 409, 80 S.E.2d 23 (1954).

■ Neither the notes nor the deeds of trust expressly disclose their purchase money character. The first provision of the statute requires the disclosure of the purchase money of the instrument on the face of the document. Generally, the failure to disclose the character of the instruments renders the anti-deficiency statute inapplicable. *Gambill v. Bare*, 32 N.C.App. 597, 232 S.E.2d 870 (1977).

■ However, the second provision of the statute for all practical purposes excuses this omission due to the facts of these cases. The second provision holds the seller liable to the buyer for any losses the buyer sustains as a result of the failure to disclose the purchase money character of the instrument when the instrument was prepared under the direction and supervision of the seller. N.C.Gen.Stat. § 45–21.38. The claimant has not denied that the notes and deeds of trust were prepared under its direction and supervision. Indeed, the circumstances surrounding these sales and an inspection of the documents themselves indicate that this was the case. Therefore, by the second provision the claimant would be liable to the Debtors for any loss that they might sustain because of the claimant's failure to disclose the purchase money character of the documents. To require the Debtors first to pay the deficiency, thereby sustaining a loss, and then require them to sue the claimant for this loss, would be a circuitous exercise and an unnecessary burden on the administration of these wage earners' plans. Practicalities dictate a more direct route to the resolution of these disputes.

The claimant urges a narrow interpretation of the anti-deficiency statute. Relying on *Brown v. Kirkpatrick*, 217 N.C. 486, 8 S.E.2d 601 (1940), the claimant argues that the statute does not prohibit a holder of a second deed of trust from claiming a deficiency after a foreclosure on the first deed of trust derives an amount insufficient to satisfy the second deed of trust. The claimant's reliance on *Brown* is misplaced for three reasons.

First, the facts in *Brown v. Kirkpatrick* differ substantially from these cases. In *Brown* the second deed of trust was partially paid, cancelled, and then refinanced for an amount substantially smaller than that originally financed. This refinancing presumably deprived the transaction and the respective instruments of their purchase money character and rendered the statute inapplicable. In the present cases, the second deeds of trust have not been refinanced. Their purchase money character remains intact from the date the Debtors purchased their homes from the claimant.

As well, in *Brown* the facts show that the second deed of trust was assumed years later by a third party purchaser. The assumption of the deed of trust by a third party indicates that the value of the property must have at least equalled the amount of the lien imposed by the deeds of trust at the time of the assumption. Thus, the objective of the anti-deficiency statute, to protect purchasers from the potentially oppressive tactics of vendors who finance the sale of real property, was not threatened in

*Brown* since the subsequent purchase price of the property at least equalled that amount paid for the property.

On the other hand, the facts of the present cases reveal a wide variance between the purchase prices obtained by the claimant and the amounts obtained upon foreclosure of the properties. The foreclosures only brought amounts equal to the first deeds of trust. These foreclosure sale prices indicate not only that the present market value of these homes is substantially less than that paid years before by the Debtors, despite the steady appreciation of real property values during that time, but also that the claimant failed to bid, at a minimum, the amount it willingly financed at the purchases. Under these circumstances, the objective of the anti-deficiency statute seems threatened and the statute properly applicable.

Second, the claimant's reliance of *Brown v. Kirkpatrick* is misplaced because that case's authority, to the extent it may apply in these cases, is diminished by the 1961 amendment to the statute. The 1961 amendment, adding the words "to the seller", clarified the protection intended by the legislature. *Childers v. Parker's, Inc.,* 274 N.C. 256, 162 S.E.2d 481 (1968). Before the amendment, confusion existed as to the application of the statute. The original wording could be read to prohibit all deficiencies on deeds of trust extended for the purchase of real estate. However, the legislature by inserting "to the seller" indicated that protection was to be afforded to those who purchased real property from a seller who also financed the sale. *Id.* Thus, the 1961 amendment indicates the statute's applicability in these cases.

Third, *Brown v. Kirkpatrick* no longer provides persuasive authority regarding the application of the anti-deficiency statute since that decision resulted from a literal construction of the statute. The *Brown* decision expresses no regard for the reason or purpose of the statute. Instead, the decision mechanically applies the provisions of the statute and expresses the view that judicial interpretation of the statute is inappropriate. 217 N.C. at 487–88, 8 S.E.2d at 602. The North Carolina Supreme Court now refuses to approach the anti-deficiency statute on such narrow terms. *Realty Co. v. Trust Co.,* 296 N.C. 366, 250 S.E.2d 271 (1979).

In *Realty Co.,* the Supreme Court construed the anti-deficiency statute more broadly to prevent its evasion and to give effect to the General Assembly's intent. 296 N.C. at 373, 250 S.E.2d at 275. Rejecting the mechanical application of the statute, the Court ruled "that the spirit and reason of the law shall prevail over its letter". 296 N.C. 372, 250 S.E.2d at 274–75. Accordingly, the Court held that the statute limits the seller who finances the purchase of real property to those funds the seller obtains from a foreclosure upon the property. 296 N.C. at 373, 250 S.E.2d at 275.

Thus, the claimant's reliance on *Brown v. Kirkpatrick* and narrow interpretation of the anti-deficiency statute is contrary to the law of North Carolina and, therefore, will not be followed by this Court.

In light of the facts both cases present and the broad interpretation North Carolina courts afford the State's anti-deficiency statute, this Court concludes that the statute applies in both cases. Therefore, the claimant's deficiencies following the foreclosures of the properties are not enforceable. The North Carolina courts extend full protection under the statute and do not tolerate its circumvention. This Court will do likewise.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the unsecured claims of Standard Construction Company be disallowed.