25 F.3d 1040
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Mack B. PEARSALL; Thomas J. Pearsall, Jr., Plaintiffs-Appellees,
v.
Lowell E. NELSON; Kathleen Nelson, Defendants-Appellants.
 No. 93-1778.
 United States Court of Appeals, Fourth Circuit.
 Argued: April 11, 1994.
Decided: June 16, 1994.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (CA-91-71-2-BO)
 John Walton Minier, Yates, McLamb & Wehyer, Raleigh, NC, for appellants.
 Scott Kyle Beaver, Robert Mason Wiley, Battle, Winslow, Scott & Wiley, P.A., Rocky Mount, NC, for appellees.
 E.D.N.C.
 AFFIRMED.
 Before HALL and LUTTIG, Circuit Judges, and WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 This action arises from the district court's granting of summary judgment for the plaintiff-appellees. The district court initially held that collateral estoppel barred the defendant-appellants from asserting the North Carolina Anti-Deficiency statute as a defense. The district court further held that even if collateral estoppel did not bar this action, the North Carolina Anti-Deficiency statute did not apply to the facts of this case.
 
 
 2
 The North Carolina Anti-Deficiency statute does not apply in the facts of this case and consequently the collateral estoppel issue need not be addressed. There being no error in the district court's determination, we affirm the district court's holding that the North Carolina Anti-Deficiency statute does not apply to the facts of this case.
 
 I.
 
 3
 On December 24, 1988, Outer Banks Sails Limited Partnership ("Outer Banks") agreed to purchase the Sea Oatel Motel and Dareolina Restaurant (the "Motel") from Whalebone Limited Partnership ("Whalebone"). The plaintiff-appellees are limited partners of Whalebone. Outer Banks agreed to pay $400,000 down, assume Whalebone's first lien mortgage indebtedness and execute a promissory note ("Note") secured by, among other things, a second lien deed of trust on the Motel.
 
 
 4
 Outer Banks was controlled by two general partners. Defendant-Appellant Lowell Nelson was one general partner and KLN Sails, Inc. was the other general partner. Defendant-Appellant Kathleen Nelson was the president of KLN Sails, Inc. As additional security, defendants were required to personally guaranty all of Outer Banks' obligations.
 
 
 5
 Whalebone wanted to structure the purchase as a like-kind property exchange to take advantage of certain tax benefits. In order to comply with the tax regulations, Whalebone entered into a Purchase and Sale/Exchange agreement (the "Agreement") with Outer Banks where Outer Banks would transfer the above consideration to Planters National Bank ("Planters") as Outer Banks' escrow agent. As a part of the Agreement, Outer Banks entered into an agency agreement with Planters. This agency agreement provided that Planters would act as Outer Banks' escrow agent as well as Outer Banks' agent for the purpose of acquiring exchange property to be deeded to Whalebone.
 
 
 6
 According to the Agreement, Whalebone had two options: it could obtain ownership of the escrow proceeds by directing Planters to transfer the proceeds to it, or it could direct Planters to purchase realty with the escrow proceeds, which realty would become Whalebone's. The Agreement gave Whalebone 180 days to direct Planters' ultimate actions. If Whalebone failed to act, the Escrow Proceeds automatically reverted to Whalebone. If Whalebone failed to act or instructed Planters to transfer the proceeds to Whalebone, the tax benefits would have been lost.
 
 
 7
 Within the 180 day period, Whalebone directed Planters to sell the escrow proceeds to Citizens Savings and Loan Association of Rocky Mount ("Citizens") and to use the funds obtained from Citizens to purchase and transfer to Whalebone like-kind real property in Memphis, Tennessee. To induce Citizens to purchase the escrow proceeds, the Pearsalls guaranteed the Note. Citizens also received a second lien deed on the Memphis property.
 
 
 8
 In March of 1990, Outer Banks defaulted and the Pearsalls, as guarantors, made payments to Citizens according to the Note. At the Note's maturity, the Pearsalls purchased the Note from Citizens and foreclosed on the Motel. After foreclosure, a deficiency remained since the foreclosure did not bring the full amount of the debt. Outer Banks was in bankruptcy so the Pearsalls asserted a deficiency claim in the bankruptcy court. The deficiency claim was allowed against Outer Banks. Outer Banks made three attempts to appeal the bankruptcy court's decision but all three attempts failed because of technicalities.
 
 
 9
 The Pearsalls filed this action against the Nelsons, as guarantors of the Note, for the deficiency amount. The Nelsons contend that North Carolina's Anti-Deficiency statute protects them from any deficiency. The district court granted the Pearsalls' motion for Summary Judgment with respect to the deficiency amount and the attorney fees associated with the collection of the deficiency amount. The district court also denied the Nelsons' motion for Summary Judgment.
 
 II.
 
 10
 North Carolina's Anti-Deficiency statute reads in part:
 
 
 11
 In all sales of real property by mortgagees and/or trustees under powers of sale contained in any mortgage or deed of trust executed after February 6, 1933, or where judgment or decree is given for the foreclosure of any mortgage executed after February 6, 1933, to secure to the seller the payment of the balance of the purchase price of real property, the mortgagee or trustee or holder of the notes secured by such mortgage or deed of trust shall not be entitled to a deficiency judgment on account of such mortgage, deed of trust or obligation secured by the same: Provided said evidence of indebtedness shows upon the face that it is for the balance of purchase money for real estate ...
 
 
 12
 N.C. Gen.Stat. Sec. 45-21.38 (1967).
 
 
 13
 The statute applies to purchase-money mortgages and deeds of trust given by the vendee to the vendor and application to a third party is limited to assignees of the seller. Childers v. Parker's Inc., 274 N.C. 256, 162 S.E.2d 481 (1968). It was the intent of the legislature to limit "the creditor to the property conveyed when the note and mortgage or deed of trust are executed to the seller of the real estate and the securing instruments state that they are for the purpose of securing the balance of the purchase price." Ross Realty Co. v. First Citizens Bank and Trust Co., 296 N.C. 366, 370, 250 S.E.2d 271, 273 (1979).
 
 
 14
 The facts of this case are unique and require an interpretation as to whether or not the transaction was either a purchase-money mortgage or a third party mortgage. The district court ruled that the transaction "was not a seller-financed purchase-money deed of trust within the scope of N.C. Gen.Stat. Sec. 45-21.38." In reaching this decision, the district court noted that: the purchase-money for the exchange property was provided by a bank; the note was payable to a bank; and the deed of trust was held by a bank.
 
 
 15
 Appellants contend that the transaction was a purchase-money mortgage since Outer Banks never received financing from any third party. Appellants argue that the definition of a purchase-money mortgage is where property is sold and financing is arranged without a third party loan. Since Outer Banks never received any third party financing, Appellants argue that the transaction must be classified as a purchase-money mortgage and the Anti-Deficiency statute should bar this action.
 
 
 16
 Appellees contend that the transaction was not a purchase-money mortgage since Citizens Bank provided the loan for the exchange property. Appellees argue that in order for the transaction to be a purchase-money mortgage, Whalebone must provide the mortgage. Thus, appellees argue that since Whalebone never provided any mortgage for Outer Banks, the transaction did not constitute a purchase-money mortgage and the Anti-Deficiency statute should not bar this action.
 
 
 17
 Appellants also argue that the transaction should be viewed as two distinct transactions. The first occurred when the Motel was sold and the Note was given to Planters in escrow for Whalebone. The second occurred when Citizens Bank loaned the money to purchase the exchange property. Under this interpretation of the events, the first transaction more closely resembles a purchase-money mortgage since only Outer Banks and Whalebone were involved.
 
 
 18
 However, appellees argue that the transaction should be viewed as a single event where the final portion occurred several months after the transaction was initiated. Appellees' argument is more in line with the typical mortgage where Citizens provided funding to complete the transaction between Whalebone and Outer Banks. Under appellees' view, the transaction does not resemble the typical purchase-money mortgage since Citizens Bank provided the funding for the purchase of the exchange property.
 
 
 19
 According to the Agreement and the agency agreement, it is clear that the parties intended to structure the transaction to create a tax-free exchange in order to avoid adverse tax consequences for the Whalebone. As part of this transaction, Outer Banks delivered money and a Note to Planters. Outer Banks was also required to purchase exchange property and deed this property to Whalebone. To satisfy this requirement, Outer Banks and Planters entered an agency relationship where Planters agreed to act as Outer Banks' agent in the procurement of exchange property that would be satisfactory to Whalebone.
 
 
 20
 At no time did Whalebone or the Pearsalls provide any money to allow Outer Banks to purchase the Motel. Likewise, neither Whalebone nor the Pearsalls ever agreed to finance the transactions. This entire transaction was structured to be a single tax-free exchange of property. The confusion occurs because Outer Banks did not initially have any property with which to exchange with Whalebone.
 
 
 21
 The delay, which Outer Banks contends is an indication that there were two transactions, was actually caused by Outer Banks' initial lack of the necessary exchange property. The delay was necessary to allow Planters, acting as Outer Banks' agent, to acquire and transfer the exchange property to Whalebone.
 
 
 22
 Accordingly, the district court was correct in holding that the transaction between Outer Banks and Whalebone does not constitute a seller-financed purchase-money deed of trust within the scope of North Carolina's Anti-Deficiency statute, N.C. Gen.Stat. Sec. 45-21.38. Therefore, the Anti-Deficiency statute does not prohibit the Pearsalls from seeking the deficiency from the Nelsons.
 
 
 23
 Appellees also contend that collateral estoppel bars appellants from arguing that the Anti-Deficiency statute applies. This contention has been rendered moot since the Anti-Deficiency statute has been found to be inapplicable. Therefore the issue of collateral estoppel will not be addressed.
 
 
 24
 During oral arguments, the parties addressed the applicability of North Carolina's Anti-Deficiency statute to guarantors of a mortgage. Whether the North Carolina Anti-Deficiency statute covered guarantors was not addressed by the district court and was not made an issue on appeal. Consequently, this decision does not address whether guarantors are protected by N.C. Gen.Stat. Sec. 45-21.38. We do note however, that the North Carolina Court of Appeals has recently held that North Carolina's Anti-Deficiency statute does not bar an in personam action against a nonmortgagor guarantor of a purchase money promissory note. Adams v. Cooper, No. 931SC561, 1994 WL 136302 (N.C.App. April 19, 1994).
 
 
 25
 There being no genuine issues of material fact in dispute, the judgment of the district court is
 
 
 26
 AFFIRMED.