The Full Commission has reviewed the award based upon the record of proceedings before the Deputy Commissioner and with reference to the errors alleged. Plaintiff argues that the defendant breached its responsibility by failing to handle this case pursuant to the Workers' Compensation Act. Plaintiff further argues that the defendant circumvented the specific provisions of the Workers' Compensation Act and used that procedure to avoid complying with the Act, and thereby breached the duty of indemnifying plaintiff and making payment for her medical provisions pursuant to the Act.
Defendant argues that plaintiff's failure to file a Form 18 with the Industrial Commission within the two-year period of time specified in N.C.G.S. § 97-24 denies the Industrial Commission of jurisdiction with which to deal with the matter.
The Deputy Commissioner was persuaded by the defendant's argument and brief and denied plaintiff's claim for failure to file a claim within the two-year period of time subsequent to the injury complained of.
After a full review of the record and hearing arguments of counsel, the Full Commission was persuaded that the Deputy Commissioner committed error in his decision in this matter, and that decision is HEREBY REVERSED.
The case was initially heard before the Deputy Commissioner in Raleigh on July 8, 1992. Thereafter, following receipt of the depositions of Pamela J. Whitney, M.D., and Mark A. Silver, and the receipt of briefs from the parties, this matter was ready for decision.
* * * * * * * * * * *
The parties agreed to, and the Full Commission finds as fact, the following matter set forth as
STIPULATIONS
1. At the time of the injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer at that time.
3. Aetna Casualty Surety Company was the compensation carrier on the risk.
4. Plaintiff sustained an injury by accident to her back, hands and knee on February 8, 1989.
5. Plaintiff's average weekly wage was $595.90.
6. A stipulation of the parties received April 12, 1993 concerning the medical records of plaintiff from Charles A. Cook, M.D., Paul L. Burroughs, M.D., Richard Weisler, M.D., and Daphne Rudolph, is stipulated into evidence.
7. A stipulation of the parties dated July 17, 1993 concerning certain progress notes is stipulated into evidence.
8. A group of documents collectively marked as Stipulated Documents 1, consisting of orders from the Industrial Commission, health insurance claim forms, medical records, Industrial Commission Form 19, and a previous letter of representation from Robert A. Evans, Attorney at Law, are stipulated into evidence.
* * * * * * * * * * *
RULINGS ON EVIDENTIARY MATTERS
The objection contained within the depositions of Pamela J. Whitney, M.D., and Mark A. Silver, are OVERRULED.
* * * * * * * * * * *
Based upon all of the competent evidence in the record, the Full Commission makes the following
FINDINGS OF FACT
1. Plaintiff was born June 9, 1949, has completed the twelfth grade, and has attended one year of college.
2. Plaintiff first began working for defendant-employer at this facility in Greenville, North Carolina in 1973. In or around 1985 plaintiff was transferred to defendant-employer's facility in the Research Triangle Park, where she worked as a hospital bids coordinator.
3. Plaintiff's duties with defendant-employer as a hospital bids coordinator included giving prices on drugs to sales representatives in hospitals, answering phones, giving bids, entering information on a computer and working with others in the bidding process.
4. On February 8, 1989 plaintiff sustained an injury by accident when she fell on stairs at the premises of the defendant-employer. Such event was within the scope of her employment in that it was an unsuspected and untoward event not anticipated by the plaintiff.
5. As a result of her fall in February 1989, plaintiff sustained cervical strain which developed into myofascial pain syndrome. In addition, plaintiff sustained an injury to her left knee, carpal tunnel syndrome of her left hand, and an aggravation of plaintiff's pre-existing depression.
6. Following her fall in February 1989, plaintiff has been seen by plaintiff's treating physician, Dr. Cook; Dr. Montgomery, an orthopedist; Dr. Whitney, a neurologist; Dr. Burroughts, an orthopedist; Dr. Cromer, defendant-employer's company physician; Dr. Weisler, a psychiatrist, and Mr. Mark A. Silver, a clinical social worker.
7. As a result of her injuries, plaintiff was unable to work for a total of 68.5 days between February 8, 1989 and September 6, 1989. Plaintiff was paid for her time lost under defendant-employer's salary continuation plan by using sick leave and vacation time.
8. After receiving assurance from two different employees of Burroughs Wellcome Company that plaintiff's compensation would continue if she were to resign, she did resign her position on September 5, 1989. Thereafter, defendant-employer voluntarily paid plaintiff's medical expenses through August 1989.
9. Plaintiff failed to file a claim (Form 18) with the Industrial Commission within two years of February 8, 1989; however, the defendant continued to pay her wages under a wage continuation program established by the defendant which purportedly eliminated the need for compliance with the Workers' Compensation Act.
10. There is sufficient evidence of record from which to prove by its greater weight that defendants induced plaintiff into a delay in filing her claim with the Industrial Commission within two years of February 8, 1989.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission makes the following
CONCLUSIONS OF LAW
1. Notice of an accident given to the employer is required under N.C.G.S. § 97-22 in writing, "unless it can be shownthat the employer, his agent or representative, had knowledge ofthe accident, or that the party required to give such notice hadbeen prevented from doing so by reason of physical or mentalincapacity, or the fraud or deceit from some third person; but nocompensation shall be payable unless such written notice is givenwithin 30 days after the occurrence of the accident or death,unless reasonable excuse is made to the satisfaction ofthe Industrial Commission for not giving such notice and the Commissionis satisfied that the employer has not been prejudiced thereby." (Emphasis added.)
The Court of Appeals in Belfield v. Weyerhaeuser Co., 77 N.C. App. 332
(1985) met the issue of the literal application of N.C.G.S. § 97-24 with respect to its literal terms.
The Belfield case (page 335) holds that "The question has not been reached since but now is squarely before us we hold that a party may be equitably estopped from asserting the time limitation in N.C.G.S. § 97-24 as a bar to jurisdiction." (Citations omitted).
Further quoting from Belfield (page 335), "It has been repeatedly held that the Workers' Compensation Act requires liberal construction to accomplish the legislative purpose of providing compensation for injured employees." See Watkins v.City of Wilmington, 290 N.C. 276, 225 S.E.2d 577 (1976). "We note that the distinction at issue in Joyner and in the Instant
case arises from the application of court made rules of statutory construction. The legislative intent should supersede those rules." See Ross Realty Co. v. Citizens Bank Trust Co.,296 N.C. 366, 250 S.E.2d 271 (1979): 82 CJS Statutes Section 311 (1953). "The Joyner Court expressed concern over the potentially harsh results arising from a strict application of the time limitation. We find the Joyner rationale both relevant and persuasive here."
In the case now before the Commission the record is replete with indications that the defendant not only was aware of the injury to the plaintiff, but had filed a Form 19 on or about February 21, 1989 and paid for plaintiff's medical treatment through its workers' compensation carrier, Aetna. See page 3 of the transcript for testimony of Ralph Dudley, manager of Occupational Health and Safety Services in Greenville, North Carolina for Burroughs Wellcome Company.
An open workers' compensation file existed in the Greenville office on this matter (transcript — page 9, testimony of Ralph Dudley).
Ms. Lou Jean Manning, defendant-employee, was the person responsible for the day-to-day coordination with the insurance carrier of workers' compensation claims. The insurance carrier at that time was Aetna. Ms. Manning was the administrative coordinator, which included workers' compensation for all of Burroughs Wellcome Company in the Greenville office (transcript — page 14).
The workers' compensation file on this claimant under the supervision of Ms. Manning, had only a Form 19. There was no Form 28B, no Form 24, but several Form 25Ms were in the file, a portion of which had been used to pay bills received on this claimant by Ms. Manning (transcript — page 15).
An accident report was received by Ms. Manning and she had no disagreement with the fact that the claimant had an accident on the job. She immediately filed a Form 19 and notified the insurance carrier (transcript — page 16). Medical payments were made on the file until at some point the carrier stopped making such payments after Ms. Manning stopped receiving bills (transcript — page 17). Ms. Manning thereafter describes the salary continuation plan for employees (transcript — page 18). This payment is in lieu of workers' compensation payments. When the claimant reaches maximum improvement, the employer through Ms. Manning then would look to see what type of continuing coverage, if any, the claimant is entitled to following rating by the doctor. The company would take care of everything until the claimant reached maximum medical improvement and had been rated (transcript — page 20). Following that point the worker is then paid any compensation due through the workers' compensation program up until August 9, 1989. The company paid all medical bills but thereafter they were paid, if any were paid, by workers' compensation through Aetna Casualty Company (transcript — page 20).
In cross examination Ms. Manning testified (transcript — page 23) that under the salary continuation plan as previously discussed, the benefits continue with the employee if they resigned. After that time, if any benefits are paid, they are paid by workers' compensation.
The Form 25Ms are forwarded directly to the insurance carrier rather than to the Industrial Commission for approval when medical bills are being petitioned for (transcript — pages 25 and 26).
Ms. Deborah Donau was an occupational health nurse at Burroughs Wellcome Company, Research Triangle Park, when this claimant was injured in 1989 (transcript — page 27). Ms. Donau became award of the claimant's injury the day following its occurrence in February 1989 (transcript — page 29). Notes from other nurses as well as Dr. Cromer, the company doctor, were included in the file retained by Ms. Donau.
Ms. Donau also completed forms for anything with workers' compensation or a work-related injury at the time of the injury, and that report is sent to Ms. Manning in Greenville. Notes in that file indicated that claimant was notified to be at that office on February 10, 1989 to see Dr. Cromer.
Ms. Freeman contacted Ms. Donau during August 1989 requesting a second medical opinion. At this time Ms. Donau advised Ms. Freeman that since she was being seen as a workers' compensation case that she had to have approval through the workers' compensation carrier prior to seeing another physician. A second opinion was approved by the insurance carrier (transcript — pages 34 and 35).
 Q. Do you recall that she was concerned that if she resigned, that workers' comp would not continue — would not pay for this medical exam?
A. That is correct.
 Q. Do you also recall that you talked to her and since you had talked to Mr. Randolph, assured her that, yes, workers' comp would pay for that?
A. That is correct.
 Q. Following that conversation, she let you know that she probably would go ahead and resign, knowing that?
 A. She had indicated that she had planned to resign.
 Q. But after she received that reassurance, then she went ahead and resigned, is that correct?"
Ms. Myrtle Garth was employed by Burroughs Wellcome as contracts manager for a period of 13 years prior to this incident. Her files reflect that the claimant's employee file contained, among other things, a notation that Ms. Freeman was injured at work in 1989 when she had an accident while running to catch a shuttle bus (transcript — page 40-45).
Ms. Garth was aware that Ms. Freeman had missed quite a bit of work due to a work-related injury (transcript — page 47). She denies having any conversation with Ms. Freeman, however, as to how workers' compensation was paying for her injuries at the time.
 Q. If you look at the notes, does that refresh your recollection about it?
 A. Yes. Are you concerned with just the part that speaks of the compensation?
Q. Yes. What date are you referring to?
 A. Okay. I'm referring to 8 — the date of — on 8-23-89. It was a log.
Q. All right.
 A. Where it says, "Debbie said that she had talked with Jean last week." Do you have that?
Q. Okay. Read that for us. What does that say?
 A. Okay. "Debbie said she had talked with Jean last week because Jean was concerned with BW and Company continuing to pay for injuries as a result of the fall, upon her resignation. Debbie said she assured Jean that BW would handle the claims.
 "At that time, Debbie said Jean told her that she would be resigning on September 22nd, `89. Debbie encouraged Jean to go ahead and submit the written notice of resignation."
 Q. Do you recall, or do your notes indicate, an entry on August the 17th, 1989? A week earlier than the one — or approximately a week earlier — than the one you just read? Where there appears to be a reference to Aetna, I think. The best I can read it.
A. Yes, I've got that.
 Q. Can you read that one, also, for the record, please?
 A. Okay. "Jean told me that she would definitely be leaving the company, probably around September 15th of `89. She is waiting for diagnosis from an orthopedic specialist. She says Aetna Life Insurance, which is the compensation insurance for BW Company, advised her to settle the matter of her work-related injury before leaving the company.
 "Jean has an appointment on September 1st at ten-thirty. She says that at that point, the specialist should be able to determine whether she will have to live with the pain the rest of her life or if it will pass."
 Q. Then it was about a week later than that, that you had the other conversation —
A. Right.
Q. — that you talked about earlier?
A. That's correct.
 Q. Where she was assured that the payments would continue?
 MS. KING: Objection. I'm going to move to strike.
 THE COURT: Sustained. Allowed.
Q. What's your date of birth, Ms. Freeman?
A. June 9th, 1949.
Q. Are you currently employed?
A. No, I'm not.
Q. When were you last employed full-time?
A. September 6th of `89, full-time.
Q. Who were you working for at that time?
A. Burroughs Wellcome Company.
 Q. What was your job when you worked for Burroughs Wellcome?
A. I was a hospital bid coordinator.
Q. Describe exactly what happened when you fell?
 A. Well, from what I can remember is my shoe came off and I just went down steps.
Q. Were you outdoors?
A. Yes.
Q. What were you doing?
A. Going down to catch the — the bus.
 Q. Were you on the premises of Burroughs Wellcome?
A. Yes.
 THE COURT: According to the pre-trial agreement, defendants have agreed to stipulate the plaintiff sustained an injury by accident to her back, hands, and knees on February 8th, 1989.
 MS. KING: Arising out of and in the course and scope of — (unintelligible). The agreement doesn't say that, but I'm willing to do it.
 THE COURT: All right.
 Q. We've stipulated that you injured your hands and back and neck.
A. Uh-huh (yes).
Ms. Freeman made a report immediately upon her fall to her supervisor, Ms. Myrtle Garth. She was then seen by Dr. Cromer, and Dr. Cook, the former being the company doctor for Burroughs Wellcome, and she was further seen by two nurses on the same date. She also saw Dr. Cook, her private physician, at about the same time.
 Q. — of 1989, what was the reason that you wanted a leave of absence?
 A. The reason I wanted a leave of absence was so that I could take some personal time to try to get myself straightened out.
Q. Were you able to take the leave of absence?
A. No.
 Q. What did you decide to do about that — after you couldn't take a leave of absence?
 A. Well, after I couldn't take the leave of absence, I knew that I wouldn't be able to stay there too much longer. So I talked with my husband about, you know, just going on and resigning.
Q. Did you do that?
A. Yes, I did.
 Q. When did you first talk to your supervisors or other folks about resigning? Do you recall?
A. I think it was in August of `89.
Plaintiff was, at the time of her resignation, physically and mentally unable to work full time (transcript — page 82).
It is clear that the defendant was notified almost immediately upon the occurrence of this injury to the plaintiff. The record contains no information to indicate any inconvenience or detriment to the company for any lack of receipt of the Form 18, which was filed on February 19, 1991.
2. Defendants are hereby estopped to rely upon N.C.G.S. § 97-24 and bar plaintiff's claim.
* * * * * * * * * * *
Based upon all of the foregoing, the Full Commission enters the following
ORDER
This case is remanded to the Deputy Commissioner to be assigned who shall make adequate inquiry among all issues arising as a result of the injury of the claimant on February 8, 1989 while employed with Burroughs Wellcome Company. There shall be no assessment of costs or attorney's fees at this time, except that defendants shall pay an expert witness fee of $100.00 to Mr. Mark A. Silver.
This case is removed from the Raleigh docket pending further inquiry by the Deputy Commissioner assigned.
This the _____ day of __________________________, 1995.
 FOR THE FULL COMMISSION S/ _______________________ JAMES J. BOOKER COMMISSIONER
CONCURRING:
S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
S/ _____________________ DIANNE C. SELLERS COMMISSIONER
JJB:mj 3/17/95