770 P.2d 766

John P. BAKER and Deborah Mae
Baker, husband and wife,
Plaintiffs/Appellants,

v.

Gary GARDNER and Margaret
Gardner, husband and wife,
Defendants/Appellees.

No. CV–88–0104–PR.

Supreme Court of Arizona,
En banc.

Dec. 20, 1988.

Supplemental Opinion on Grant of
Reconsideration March 20, 1989.

Norman Rosenblum, Scottsdale, for plaintiffs/appellants.

Oscar C. Rauch, Phoenix, for defendants/appellees.

Ryley, Carlock & Applewhite, P.A. by George Read Carlock, Abigail Carson Berger, Phoenix, for amici curiae Arizona Bankers' Ass'n and Sav. and Loan League of Arizona, The Arizona Bank, Citibank (Arizona), First Interstate Bank of Arizona, The Valley Nat. Bank.

Norling, Oeser & Williams by Steven H. Williams, Reinhard W. Fischer, Phoenix, for amici curiae Strom.

FELDMAN, Vice Chief Justice.

A promissory note evidencing the deferred balance of the purchase price of residential property was secured by a second deed of trust. We granted review to determine whether the note's holder may waive the security of the deed of trust and bring an action for the entire unpaid balance. We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

### FACTS

The Bakers sold the Gardners a single-family home for $131,000. Most of the purchase price was financed by an ICA Mortgage Corp. (ICA) loan, secured by a deed of trust. For the balance of the price, the Gardners gave the Bakers a promissory note for $17,500, secured by a second trust deed. The Gardners subsequently defaulted on both loans. ICA noticed a trustee's sale, as A.R.S. §§ 33–807 and 33–808 permit.

Before the sale, the Bakers brought this action to recover the unpaid balance of the promissory note. They did not exercise their rights under the second trust deed. Both the Bakers and the Gardners moved for summary judgment. The trial judge granted the Gardners' motion, holding that A.R.S. § 33–814(E) (the so-called "anti-deficiency" statute) precluded the action on the note.

The court of appeals reversed, reasoning that A.R.S. § 33–722 (providing for a creditor's election of remedies) permitted the action. *Baker v. Gardner*, No. 2 CA–CV 87–0282 (Ariz.Ct.App. Feb. 2, 1988) (memorandum decision). Consequently, the court held that a trust deed beneficiary/creditor can choose either to exercise his rights under the trust deed or waive the security and file an action for the unpaid balance of the note. *Id.* at 3. We granted review because the issue is of statewide importance and of first impression. *See* Rule 21, Ariz.R.Civ.App.P., 17B A.R.S.

### ISSUE AND CONTENTIONS

We must decide whether the "anti-deficiency" statute, A.R.S. § 33–814(E), limits the trust deed beneficiary to selling the secured property to satisfy the debt or if A.R.S. § 33–722 allows the beneficiary to waive the security and bring an action for the unpaid balance of the promissory note.

The Bakers argue that A.R.S. § 33–722 allows them to waive the security and sue on the promissory note. The statute provides as follows:

> If separate actions are brought on the debt and to foreclose the mortgage given to secure it, the plaintiff shall elect which to prosecute and the other shall be dismissed.

If correct, the Bakers could obtain a judgment against the Gardners for the loan's unpaid balance and collect that judgment by execution against all the Gardners' non-exempt property. *See, e.g.,* A.R.S. § 14–2402.

The Gardners counter that this interpretation of § 33–722 circumvents A.R.S. § 33–814(E), which specifically applies to trust deeds encumbering certain residential parcels. That statute reads:

> E. If trust property of two and one-half acres or less which is limited to and utilized for either a single one-family or a single two-family dwelling is sold pursuant to the trustee's power of sale, no action may be maintained to recover any difference between the amount obtained by sale and the amount of the indebtedness and any interest, costs and expenses.[1]

The Gardners contend that where the property meets the criteria of § 33–814(E), that statute supersedes § 33–722. Any other interpretation, they argue, permits the beneficiary to collect the entire loan balance when § 33–814(E) limits the beneficiary to only the proceeds of the forced sale of the property.

## DISCUSSION

### A. The Court of Appeals' Decision

At first reading, the statutes conflict: if § 33–722 applies, the Bakers obtain a judgment for the balance of the debt, but if § 33–814(E) applies, the Bakers can only force the sale of the encumbered property and cannot recover any deficiency between the sale proceeds and the balance of the debt. The court of appeals resolved this conflict by relying on its holding in *Southwest Savings & Loan Association v. Mason*, 155 Ariz. 443, 747 P.2d 604 (Ct.App. 1987), *vacated*, 156 Ariz. 210, 751 P.2d 526 (1988).[2] *Baker*, memo. decision at 2.

*Southwest Savings* dealt with the conflict between A.R.S. §§ 33–722 and 33–729(A). Section 33–729(A) prohibits a deficiency judgment on foreclosure of purchase money mortgages encumbering property of two and one-half acres or less utilized for one-family or two-family residences. The court of appeals concluded that it should read the anti-deficiency and election statutes *in pari materia*

> to give meaning to each.... Both sections can be given meaning by allowing an election but also by holding that once the mortgagee elects to bring an action on the note, he cannot thereafter attempt to attach the [mortgaged] property in order to satisfy that judgment on the note.

155 Ariz. at 445, 747 P.2d at 606. The appellate court's construction, in other words, effectively amends A.R.S. § 33–722 to read as follows:

> If separate actions are brought on the debt and to foreclose the mortgage given to secure it, the plaintiff shall elect which to prosecute and the other shall be dismissed, *however should the plaintiff elect to waive the mortgage, he shall not be allowed to later attach the property formerly subject to the mortgage in order to evade the provisions of A.R.S. § 33-729(A).*

*Id.* (Howard, J., dissenting) (emphasis added). The majority provided no support for this construction,[3] but had to use it because otherwise the majority's reconciliation of the conflicting statutes would not only have circumvented the anti-deficiency statute, it would have repealed it.

In the present case, the majority of the court of appeals reasoned that *Southwest Savings* was "dispositive," so that the beneficiary of the trust deed, like the "mortgagee [in *Southwest Savings*] could proceed at law to collect the debt, but could not look to the property given as trust deed security...." *Baker*, memo. decision at 3. Judge Howard, dissenting in both cases, believed that "A.R.S. § 33–722 is a general statute governing mortgages, but that

---

1. The legislature has recently amended the statute. 1988 Ariz.Sess.Laws ch. 22, § 1. The amendments are irrelevant to the case before us.

2. We granted review of *Southwest Savings* on January 19, 1988. Subsequently, counsel informed us they had settled and stipulated to dismissal of the petition for review. We dismissed the petition, exercising our discretion to vacate the court of appeals' opinion. 156 Ariz. at 211, 751 P.2d at 527.

3. *See* Justice Scalia's poignant comment on the *ipse dixit* in *Morrison v. Olson*, —— U.S. ——, ——, 108 S.Ct. 2597, 2637, 101 L.Ed.2d 569 (1988) (Scalia, J., dissenting).

A.R.S. § 33–729(A) is a specific statute governing [a special] type of mortgage." *Southwest Savings*, 155 Ariz. at 446, 747 P.2d at 607 (Howard, J., dissenting). Consequently, the "remedy provided by the [anti-deficiency] statute is exclusive." *Id.; see also Baker*, memo. decision at 3 (Howard, J., dissenting from court's analysis of § 33–814(E) on the same grounds). We agree with Judge Howard.

### B. General Principles

■ Courts construe seemingly conflicting statutes in harmony when possible. *State v. Perkins*, 144 Ariz. 591, 594, 699 P.2d 364, 367 (1985), *overruled on other grounds, State v. Noble*, 152 Ariz. 284, 731 P.2d 1228 (1987). However, when two statutes truly conflict, either the more recent or more specific controls. *E.g., Pima County v. Heinfeld*, 134 Ariz. 133, 136, 654 P.2d 281, 284 (1982); *State v. Davis*, 119 Ariz. 529, 534, 582 P.2d 175, 180 (1978).

Under both principles, the anti-deficiency statute would prevail. The legislature adopted it in 1971, while the statute permitting the plaintiff to elect between separate actions comes from territorial days. *See* Civil Code § 3274 (1901). Further, the anti-deficiency statutes apply to a particular, limited group of mortgages and trust deeds —those encumbering parcels of two and one-half acres or less and used for single-family or two-family dwellings. Thus, they are more specific.

### C. Legislative Objectives

■ Such general principles, however, help courts decide questions of statutory conflict only when legislative intent or objectives are unknown. Here, therefore, dealing with conflicting and ambiguous statutes, we must try to determine legislative intent or, at least, objectives and construe the statutes to further those objectives. *See State v. Tramble*, 144 Ariz. 48, 51, 695 P.2d 737, 740 (1985).

The legislature enacted both anti-deficiency statutes in 1971 with several other consumer-oriented laws.[4] 1971 Ariz.Sess. Laws ch. 182, § 3 and ch. 136, § 7. *See generally* Boyd & Balentine, *Arizona's Consumer Legislation: Winning the Battle but ...*, 14 ARIZ.L.REV. 627, 654 (1972). These statutes were to preclude "artificial deficiencies resulting from forced sales." *Id.; see also* A.R.S. § 33–814(A). More importantly, the statutes created the "direct benefit of ... the elimination of hardships resulting to consumers who, when purchasing a home, fail to realize the extent to which they are subjecting assets besides the home to legal process." *Id.*

The legislative history of A.R.S. § 33–729(A), which applies to mortgages, demonstrates the legislature's objective of protecting consumers from financial ruin. Section 33–729(A) was part of H.B. 330, enacted in 1971 "to *protect the homeowners* from deficiency judgments." Minutes of Meeting, Committee on Ways and Means, March 31, 1971, at 2 (emphasis added). We must assume the same purpose accounts for the contemporaneous statute applying to trust deeds that encumber similar residential property. Therefore, we read both anti-deficiency statutes—§§ 33–729(A) and 33–814(E)—as evincing the legislature's desire to protect certain homeowners from the financial disaster of losing their homes to foreclosure plus all their other nonexempt property on execution of a judgment for the balance of the purchase price.

The court of appeals' construction here obviously conflicts with the legislature's objective. The Gardners presumably lost whatever equity they had in the house on the non-judicial sale noticed by ICA under the first trust deed. Under the court of appeals' opinion, the Gardners would have faced sale of their other assets on execution of the judgment on the note secured by the Bakers' second deed of trust. In our view, the legislature would not have

---

**4.** Among them was subsection (A) of A.R.S. § 33–814, which encourages the creditor to make a market value bid for property sold at a non-judicial sale by prohibiting a deficiency judgment after a trustee's sale unless the higher of the fair market value of the property or the credit bid is first deducted from the balance owing.

protected homeowners from deficiency judgments but still permitted the holder of a mortgage or deed of trust to obtain essentially the same result by waiving the security and bringing action on the note. This statutory construction seems inconsistent with the patent legislative objective.

### D. Authority on Legislative Intent

Authority supports our conclusion that the legislative objective in adopting anti-deficiency statutes such as ours is inconsistent with permitting the creditor to waive the security and bring an action on the note. Cases from California "are of particular interest as Arizona has adopted much of its redemption and mortgage statutes" from that state. *Skousen v. L.J. Development Co., Inc.*, 134 Ariz. 289, 292 n. 5, 655 P.2d 1341, 1344 n. 5 (Ct.App.1982).

Our anti-deficiency statutes are similar to Cal.Code Civ.Proc. § 580b[5] California adopted § 580b in 1933 in response to the Great Depression. *See Winklemen v. Sides*, 31 Cal.App.2d 387, 408, 88 P.2d 147, 158 (1939). The history of the legislation is described in *Cornelison v. Kornbluth*, 15 Cal.3d 590, 542 P.2d 981, 988–90, 125 Cal. Rptr. 557, 564–66 (1975), which notes that California's single-action statute preceded 1900, while the anti-deficiency statutes, like Arizona's, were adopted much later. *See also Barbieri v. Ramelli*, 84 Cal. 154, 23 P. 1086 (1890).

We considered the California anti-deficiency statute in *Catchpole v. Narramore*, 102 Ariz. 248, 428 P.2d 105 (1967). In *Catchpole*, the holder of a note given for the deferred balance of the purchase price of California residential property brought a debt action in Arizona against the note's maker. The case arose before passage of A.R.S. §§ 33–729(A) and 33–814(E), when Arizona law permitted "a deficiency judgment where the security is not sufficient to satisfy the debt." 102 Ariz. at 250, 428 P.2d at 107. However, the Arizona maker claimed that Cal.Code Civ.Proc. § 580b precluded such an action. The words of the California statute, like the subsequently enacted Arizona statutes, only prohibited a deficiency judgment after forced sale of property.

The note holder in *Catchpole* advanced essentially the same arguments as the majority of our court of appeals here. The holder contended that the California statute was procedural, directed only to the holder's remedy after sale, and therefore did not prohibit waiving the security and maintaining an action for the debt. We held, however, that California's statute was substantive and designed to destroy the creditor's right to a money judgment. The creditor/seller could not "recoup the balance due on the purchase price of real property. The statute does not simply govern applicable procedures; it *obliterates the debtor's [personal] liability*." *Id.* at 250–51, 428 P.2d at 107–08 (emphasis added). Our interpretation of the California law's objective conforms with later California cases. *See, e.g., Spangler v. Memel*, 7 Cal.3d 603, 498 P.2d 1055, 102 Cal.Rptr. 807 (1972).

Dealing with a similar statute, the North Carolina Supreme Court reached the same conclusion regarding the objective of its legislature. *See Ross Realty v. First Citizens Bank & Trust*, 296 N.C. 366, 370, 250 S.E.2d 271, 273 (1979).[6] We believe that

---

**5.** Cal.Code Civ.Proc. § 580b provided the following:

> No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, given to secure payment of the balance of the purchase price of real property.

**6.** The North Carolina statute, N.C.Gen.Stat. § 45–21.38 provided in pertinent part the following:

> Deficiency judgments abolished where mortgage represents part of purchase price.—

In all sales of real property by mortgagees and/or trustees under powers of sale contained in any mortgage or deed of trust executed after February 6, 1933, or where judgment or decree is given for the foreclosure of any mortgage executed after February 6, 1933, to secure to the seller the payment of the balance of the purchase price of real property, the mortgagee or trustee or holder of the notes secured by such mortgage or deed of trust shall not be entitled to a deficiency judgment on account of such mortgage, deed of trust or obligation secured by the same: Provided, said evidence of indebtedness shows

these cases from California and North Carolina, interpreting statutes like ours, provide clear insight to the objective of Arizona's statute. We have neither found, nor have the parties cited us to, authority supporting a different conclusion on legislative intent or objective.

### E. Authority Interpreting Anti–Deficiency Statutes

We turn now to cases from the states that have interpreted statutes similar to our anti-deficiency statutes. Acknowledging that California does not permit a creditor to waive the security and bring an action on the note, the majority of our court of appeals here and in *Southwest Savings* found California cases inapposite because California has a single-action statute (Cal.Code Civ.Proc. § 726) that requires a creditor first to exhaust the security before bringing an action on the debt, while A.R.S. § 33–722 permits an election. *See Baker,* memo. decision at 3; *Southwest Savings,* 155 Ariz. at 445 n. 2, 747 P.2d at 606 n. 2; *see also Dudley v. Peterson,* 42 Ariz. 282, 287, 25 P.2d 276, 277 (1933). We believe the California cases cannot be so distinguished.

Long before California passed its anti-deficiency statute, California courts had held that its single-action statute did not apply when the security was destroyed. The doctrine apparently arose in *Hibernia Savings & Loan Society v. Thornton,* 109 Cal. 427, 42 P. 447, 448 (1895), where the California Supreme Court stated that if the security had "become extinguished" by foreclosure of a prior lien or had "been destroyed or [had] ceased to exist," then it "may be" that the lienholder "need not go through the idle form of bringing an action for foreclosure before he can have a judgment on the note." Quoted in *Dudley,* 42 Ariz. at 287, 25 P.2d at 277; *cf. Barbieri,* 84 Cal. at ——, 23 P. at 1087 (earlier case holding single-action statute applied even though market conditions and prior liens rendered mortgage valueless).

What "may be" became law when the California Supreme Court held that the sin-

gle-action "rule of section 726 does not apply to a sold-out junior lienor...." *Roseleaf Corp. v. Chierighino,* 59 Cal.2d 35, 39, 378 P.2d 97, 99, 27 Cal.Rptr. 873, 875 (1963), relying on *Brown v. Jensen,* 41 Cal. 2d 193, 259 P.2d 425 (1953), *cert. denied,* 347 U.S. 905, 74 S.Ct. 430, 98 L.Ed. 1064 (1954). Thus, unless prevented by the anti-deficiency statute, such a lienholder could bring an action on the note. *Roseleaf Corp.,* 59 Cal.2d at 39, 378 P.2d at 99, 27 Cal.Rptr. at 875.

Notwithstanding the inapplicability of the single-action statute, California held that the later-enacted anti-deficiency statute prohibits waiving the security and suing on the note. *See, e.g., Spangler,* 7 Cal.3d at 610, 498 P.2d at 1059, 102 Cal. Rptr. at 811; *Bargioni v. Hill,* 59 Cal.2d 121, 122, 378 P.2d 593, 594, 28 Cal.Rptr. 321, 322 (1963); *Brown,* 41 Cal.2d at 195, 259 P.2d at 426. Like the case before us today, each of these cases involved sold-out junior lienholders who, despite the single-action statute, attempted to bring an action on the debt. *Spangler* is illustrative. The California Supreme Court held that even though Cal.Code Civ.Proc. § 726 did not prohibit it, a sold-out junior lienholder could not maintain an action on the note. In reaching this conclusion, the court indicated that the purpose of the anti-deficiency statute was to "discourage land sales that are unsound because the land is overvalued and, in the event of a depression in land values, to prevent the aggravation of the downturn that would result if defaulting purchasers lost the land and were [also] burdened with personal liability." 7 Cal.3d at 612, 498 P.2d at 1060, 102 Cal.Rptr. at 812. The statute prevents such evils by "placing the risk of inadequate security on the ... mortgagee." *Id.* We read our statute as having a similar purpose and endeavor to effect that purpose here.

Again we note the result the North Carolina Supreme Court reached in *Ross Realty v. First Citizens Bank & Trust,* 296 N.C. at 370, 250 S.E.2d at 273. Without prior foreclosure or sale, the creditor in *Ross* attempted to waive the security and

upon the face that it is for balance of pur- chase money for real estate ...

sue on the note. The court noted the inherent ambiguity in a statute that explicitly prohibited only deficiency judgments without any prohibition against election. Nevertheless the court concluded that the statute prohibited an election to waive the security. The court stated that due to

> the purpose for which [the statute] was adopted, the perceived problem which the statute seeks to remedy, and the effect which a literal construction of the statute produces, we are compelled to construe the statute more broadly and to conclude that the Legislature intended to take away from creditors the option of suing upon the note in [the specified type of] transaction. This construction of the statute not only prevents its evasion, but also gives effect to the Legislature's intent.

*Id.* at 373, 250 S.E.2d at 275.[7]

The Bakers have not cited to one state with an antideficiency statute that allows a noteholder to waive his security and bring an action for the unpaid debt. We have found only one such state. In *Page v. Ford,* 65 Or. 450, 131 P. 1013 (1913), the Oregon Supreme Court held that the creditor can maintain an action on the note notwithstanding the statute abolishing deficiency judgments. *Id.* at 451, 131 P. at 1013. Without analysis, except by noting the title of the statute, the Oregon court concluded that this was "settled beyond the pale of discussion." *Id.* We do not agree with this conclusion, finding it unsupported by either analysis, authority, or logic. Indeed, North Carolina rejected *Page,* describing it as having "mechanically construed" the statute while ignoring legislative intent. *Ross,* 296 N.C. at 372, 250 S.E.2d at 275. The Oregon decision is particularly inapposite here, considering the California cases and *Catchpole,* which, after detailed analysis, had reached a differ-

ent conclusion before our legislature passed the anti-deficiency statutes.

### F. Holding and Conclusion

■ We conclude that the legislature's objective in enacting § 33–814(E) was to abolish the personal liability of those who give trust deeds encumbering properties of two and one-half acres or less and used for single-family or two-family dwellings. We can further that objective only by construing the statute to forbid the circumvention the Bakers attempted here. The holder of the note and security device may not, by waiving the security and bringing an action on the note, hold the maker liable for the entire unpaid balance. Thus, with regard to the limited class of mortgages and deeds of trust described in §§ 33–729(A) and 33–814(E), the effect of the anti-deficiency statutes is to change the Arizona rule we described in *Catchpole* to the law of California as we described it in the same case.

In reaching this conclusion, we do no violence to the text of the statutes. Nor do we leave A.R.S. § 33–722 a meaningless shell. The creditor/beneficiary can still elect to sue on the note in all cases except those involving the particular mortgages and deeds of trust described in the anti-deficiency statutes. *See Southwest Savings & Loan Association v. Ludi,* 122 Ariz. 226, 228, 594 P.2d 92, 94 (1979).

We therefore vacate the court of appeals' decision and affirm the trial court's judgment. We award the Gardners attorney's fees, subject to proceedings under Rule 21, Ariz.R.Civ.App.P, 17B A.R.S.

GORDON, C.J., and HOLOHAN and MOELLER, JJ., concur.

CAMERON, Justice, dissenting.

I regret that I must dissent. The majority believes A.R.S. § 33–722 conflicts with

---

7. It may be argued, though the Bakers did not, that the anti-deficiency statute literally applies only if the property "is sold pursuant to the trustee's power of sale" and does not apply where the creditor waives the security and brings an action on the note. California, as well as North Carolina, has rejected this contention. The California court noted that § 580b

"speaks of a deficiency judgment after sale," but pointed out that the prohibited deficiency judgment "is still a deficiency judgment even though it may consist of the whole debt because a deficiency is nothing more than the difference between the security and the debt...." *Brown,* 41 Cal.2d at 197, 259 P.2d at 427.

A.R.S. § 33–729(A) and § 33–814(E). I disagree. A.R.S. §§ 33–729(A) and 33–814(E) apply only when the creditor elects to foreclose on the property while A.R.S. § 33–722 allows a creditor to choose whether to sue on the note or on the deed of trust, but prohibits the creditor from proceeding on both. Neither A.R.S. § 33–729(A) nor § 33–814(E) prohibits a mortgagee from electing to proceed at law to collect its debt. These statutes merely prohibit an action to recover any deficiency remaining after a mortgage foreclosure action. *See Southwest Savings and Loan Association v. Ludi*, 122 Ariz. 226, 228, 594 P.2d 92, 94 (1979) (A.R.S. § 33–729(A) is only applicable to deficiencies remaining after the foreclosure of a mortgage). A.R.S. § 33–729(A) states in part:

> [I]f a mortgage is given to secure the payment of the balance of the purchase price, or to secure a loan to pay all or part of the purchase price, of a parcel of real property of two and one-half acres or less which is limited to and utilized for either a single one-family or single two-family dwelling, the lien of judgment *in an action to foreclose such mortgage* shall not extend to any other property of the judgment debtor, nor may general execution be issued against the judgment debtor to enforce such judgment, and if the proceeds of the mortgaged real property sold under special execution are insufficient to satisfy the judgment, the judgment may not otherwise be satisfied out of other property of the judgment debtor, notwithstanding any agreement to the contrary.

(Emphasis added).

A.R.S. § 33–814(E) states:

> If trust property of two and one-half acres or less which is limited to and utilized for either a single one-family or a single two-family dwelling is *sold pursuant to the trustee's power of sale,* no action may be maintained to recover any difference between the amount obtained by sale and the amount of the indebtedness and any interest, costs and expenses.

(Emphasis added).

In this case, the Bakers never commenced foreclosure proceedings; thus, A.R.S. §§ 33–814(E) and 33–729(A) do not apply. The Bakers filed a complaint to recover the unpaid balance of the promissory note and never exercised their rights under the second deed of trust. At the time they filed their complaint, the first lienholder (ICA) had not yet foreclosed on the trust property. The fact that ICA did eventually foreclose on the property should not deprive the Bakers of their right to choose whether to sue on the promissory note or proceed with foreclosure. A.R.S. § 33–722 gives creditors this option:

> If separate actions are brought on the debt and to foreclose the mortgage given to secure it, the plaintiff shall *elect which to prosecute* and the other shall be dismissed.

(Emphasis added).

This section establishes that a mortgagee has the right to bring an action on the debt rather than on the mortgage if the mortgagee desires. The statute does not limit this right to apply only when the deed of trust is on property not described in the anti-deficiency statutes, i.e. less than two and one-half acres and a single one or two-family dwelling.

The majority states that they have done no damage to A.R.S. § 33–722. This is a euphemism at best and questionable at least given the fact that they have completely eliminated a creditor's right to elect his or her remedy any time a deed of trust is taken on property described in the anti-deficiency statutes.

Some might consider it good policy to prevent those creditors with a deed of trust on a family home from electing their remedy. However, it is not the function of the courts to amend statutes and deprive certain creditors of their statutory right in order to make good policy. This should be left to the legislature.

## SUPPLEMENTAL OPINION

FELDMAN, Vice Chief Justice.

The Bakers and several amici have moved for reconsideration under Rule 22,

Ariz.R.Civ.App.P., 17B A.R.S. Because the amici's briefs raise serious concerns that there may be some misunderstanding about the scope of *Baker,* we granted the reconsideration motion to clarify and, hopefully, obviate any confusion in the lending industry. We also consider amici's argument that the opinion should have only prospective application.

## DISCUSSION

### A. Scope of the Anti–Deficiency Statutes and *Baker v. Gardner*

The amici argue that even in cases that do not involve purchase money deeds of trust *Baker* may be read to prohibit creditors from waiving the security and electing to sue on the note as permitted by A.R.S. § 33–722. They contend that our holding should apply only to purchase money deeds of trust securing the type of real property described by the deed of trust antideficiency statute. *See* A.R.S. § 33–814(E) (now numbered A.R.S. § 33–814(F)). This follows, they argue, because we based the opinion on policy considerations relevant only to purchase money collateral. Thus, when the loan was not made to finance the purchase of residential real estate, the lender should have the option to either waive the security and sue on the note, as § 33–722 allows, or foreclose on the collateral and obtain a judgment for any deficiency.

The Gardners disagree, claiming that it would be better policy if lenders holding collateral on homes were limited to foreclosure without being able to execute on the borrower's other assets. The better social policy, however, was not our focus. We attempted, rather, to effect legislative objectives. *Supra* at 101, 770 P.2d at 769.

■ In pursuing that objective, we held that permitting the creditor to avoid the anti-deficiency statute by waiving the security and suing on the note would effectively destroy the anti-deficiency legislation. Consequently, the scope of *Baker* is defined by the scope of the two anti-deficiency statutes: A.R.S. § 33–729(A) (mortgages) and 33–814(E) (deeds of trust). Where the statutes forbid the creditor from obtaining a deficiency judgment, the election statute is inapplicable. *Supra* at 103, 770 P.2d at 771.

■ The converse, of course, is that under § 33–722 a creditor can elect to forego foreclosure and sue on the note in all cases except those involving the mortgages and deeds of trust to which the anti-deficiency statutes apply. *Supra* at 103, 770 P.2d at 771. The mortgage anti-deficiency statute, A.R.S. § 33–729(A), only applies to purchase money mortgages, but the deed of trust anti-deficiency statute is not limited to purchase money collateral. *See,* A.R.S. § 33–814(E). The conflict, however, is more apparent than real because a deed of trust beneficiary may choose to foreclose the deed of trust "in the manner provided by law for the foreclosure of mortgages on real property." A.R.S. § 33–807(A); *see also* § 33–814(D). When the beneficiary so chooses, the action is one "for the foreclosure of a deed of trust as a real property mortgage [and] the provisions of title 33, chapter 6, article 2 [which includes the mortgage anti-deficiency statute] are applicable." A.R.S. § 33–814(C).

■ Thus, subsection (E) of § 33–814 prohibits deficiency judgments on the described residential property only when the property "is sold pursuant to the trustee's power of sale." The creditor who holds a deed of trust on the described type of residential property and who chooses the advantages of non-judicial foreclosure cannot obtain a deficiency judgment even if he is not dealing with purchase money collateral. If, however, that creditor chooses to proceed by judicial foreclosure under § 33–814(D), the governing statute prohibits election to sue on the note only in cases involving purchase money collateral encumbering the residential property described in A.R.S. § 33–729(A).

The essence of *Baker* was simply that A.R.S. § 33–722 (permitting an election of remedies) did not apply to security covered by the later enacted anti-deficiency statutes. Any other interpretation would have destroyed the policy of consumer protection

that, in light of cases from California and this court, was our legislature's objective. *See supra* at 102, 770 P.2d at 770 (citing *Catchpole v. Narramore*, 102 Ariz. 248, 428 P.2d 105 (1967). That rationale has no application to situations in which the legislature has left the creditor power to obtain a deficiency judgment. In those cases, the election statute applies.

### B. Summary and Application

Where the creditor chooses non-judicial foreclosure, he cannot obtain a deficiency judgment if the collateral is within the class protected by the deed of trust anti-deficiency statute. Where, however, the creditor chooses judicial foreclosure, he can obtain a deficiency judgment in all cases except those involving purchase money loans on the type of real property that the mortgage foreclosure statute describes. Therefore, where the creditor can obtain a deficiency judgment he can also elect to waive the security under A.R.S. § 33–722 and sue on the note. By choosing judicial foreclosure, the creditor can obtain a deficiency judgment in all cases except those dealing with purchase money collateral on the residential property described in § 33–729(A). He may, therefore, proceed under § 33–722 in all cases that do not fall within § 33–729(A).

We reject the contention that *Baker* be given only prospective effect. Unless three conditions are present, an Arizona civil appellate decision will normally have both retroactive and prospective effect. *Law v. Superior Court*, 157 Ariz. 147, 160, 755 P.2d 1135, 1148 (1988) (supplemental opinion). *Law* describes those conditions as

1. The opinion establishes a new legal principle by overruling clear and reliable precedent or by deciding an issue whose resolution was not foreshadowed;

2. Retroactive application would adversely affect the purpose behind the new rule; and

3. Retroactive application would produce substantially inequitable results.

*Id.* We find that these three conditions are not present here.

*Baker* did not overrule any clear and reliable Arizona precedents, and our holding was foreseeable. *See supra* at 101, 770 P.2d at 769 (citing *Catchpole*).

Here, retroactive application of *Baker* advances the legislature's objective of protecting home purchasers from economic hardships. Supra at 102–103, 770 P.2d at 770–771. Thus, retroactive application would not adversely affect the purpose behind the new rule.

Finally, as to any inequities that *Baker* may visit on some lenders, giving home purchasers the full benefit of legislative protection outweighs the hardships to lenders. Even assuming, *arguendo*, that this balance may upset some leaders, we believe it preferable to follow the clear legislative objective of protecting home buyers.

GORDON, C.J. and MOELLER, J., concur.

### ORDER

The pending motions were considered by the court, Justice Corcoran did not participate.

IT IS ORDERED as follows:

1. The Motion for Reconsideration was granted for the purpose of filing a supplemental opinion. The opinion is ordered filed this date. Justice Cameron does not join in the supplemental opinion and would grant the Motion for Reconsideration for the reasons set forth in his dissent.

2. The Application for Award of Attorneys' Fees and Costs is granted, allowing fees in the amount of $7,500 and costs in the amount of $250.79.