**Walter Frank PFEIFFER, Plaintiff,**

v.

**MORGAN STANLEY CREDIT CORP.; Morgan Stanley Smith Barney LLC, Defendants.**

**No. CV 12–117–TUC–RCC.**

United States District Court, D. Arizona.

May 11, 2012.

---

Corey B. Larson, Waterfall Economidis Caldwell Hanshaw & Villamana PC, Tucson, AZ, for Plaintiff.

John Charles Hinderaker, Jesse B. Simpson, Candida M. Ruesga, Lewis & Roca LLP, Phoenix, AZ, for Defendants.

## ORDER

RANER C. COLLINS, District Judge.

When Plaintiff bought his home, he paid no money down and financed the purchase through a promissory note made out to Morgan Stanley Credit Corporation (MSCC) secured by a deed of trust for the home and funds in his brokerage account. (Doc. 1–4). Plaintiff now seeks a declaration that Arizona's anti-deficiency laws prevent Defendants from holding his brokerage account as collateral. For the reasons discussed below, the Court finds that Arizona's anti-deficiency laws do not prevent this arrangement and that summary judgment in favor of Defendants is appropriate at this time.

## I. BACKGROUND

### A. PROCEDURAL SUMMARY

Plaintiff originally filed this action in Pima County Superior Court seeking declaratory and injunctive relief as to his rights to access a brokerage account pledged as security for promissory note. (Doc. 1–4). After Defendants removed the case, the Court set a hearing on Plaintiff's application for a temporary restraining order. (Docs. 10–11). At oral argument, the parties requested the Court treat the mat-

ter as a motion for summary judgment. (Doc. 22). The Court declined to convert the application because further development of the record was necessary. (Doc. 18). Later, the Court requested additional briefing from the parties, which has now been completed. (Docs. 19, 23–26).

## B. FACTUAL SUMMARY

In July 2005, Plaintiff bought his home for $330,000.[1] (Complaint at ¶ 12). Plaintiff paid no money down and financed the purchase through a promissory note made out to MSCC secured by a deed of trust for the home and funds in his brokerage account. (*Id.* at 15 and 19–26).

The agreement relative to the brokerage account is laid out in two contracts: the Pledge and Security Agreement (PSA) and the Account Control Agreement (ACA). (*Id.* at ¶ 19). The PSA states that it creates a security interest in favor of MSCC in Plaintiff's brokerage account with Morgan Stanley DW (MSDW)/Morgan Stanley Smith Barney (MSSB)[2] "as a condition to making the Loan." (PSA at ¶ C). Plaintiff has demanded that MSSB allow him to draw the account below the minimum balance required by the PSA because he believes his business will suffer unless he is able to lend it cash now. (Complaint at ¶¶ 30–33). He has also requested that MSCC release him from the ACA and PSA. (*Id.* at ¶ 37). MSCC refused because Plaintiff's mortgage was in a group of pledged assets sold to Fannie Mae in October 2005, and MSCC expressly agreed that it would not waive its right to "require that the Pledged Asset Mortgage be paid in full before the [Pledged] Account is released to

the Pledgor." (Doc. 13, Ex. A at ¶¶ 9 and 10).

## II. ANALYSIS

In Arizona, a lender may foreclose on a property secured by a deed of trust by a judicial foreclosure or trustee's sale. A.R.S. §§ 33–807(A) and 33–814(E). Under either process, Arizona limits the lender's remedies where qualified properties are concerned. A.R.S. §§ 33–729(A) and 33–814(G). These are the statutes Plaintiff relies on in arguing that Arizona law does not permit Defendants to hold his brokerage account as collateral for the promissory note.

### A. STATUTORY LANGUAGE

The Court's primary task in interpreting a statute is to determine and give effect to the legislature's intent. *Mejak v. Granville*, 212 Ariz. 555, 557, 136 P.3d 874 (2006). The best indicator of that intent is the statutory language itself. *Id.* "[W]hen the language is clear and unequivocal, it is determinative of the statute's construction." *Backus v. State*, 220 Ariz. 101, 104, 203 P.3d 499 (2009) (internal quotation marks and citation omitted).

If the language is not clear, it is necessary to determine the legislative intent for the statute. *Id.*; *State v. Sweet*, 143 Ariz. 266, 270, 693 P.2d 921 (1985). When determining the intent of the legislature, it is "helpful and proper to turn to the overall purposes and aims of the legislature in enacting the statute in order to glean the legislative intent." *Sweet*, 143

1. At the TRO hearing, Pfeiffer testified he bought the house because his wife was terminally ill with ovarian cancer and was given three to six months to live. The sellers of the only house that met his criteria needed to close before the end of the month. Morgan Stanley was the only lender who could meet

this tight schedule, and only if he offered his brokerage account as collateral or cashed out the account.

2. MSDW was succeeded in interest by MSSB. (Doc. 1–4 at ¶ 29). The brokerage account is now held and administered by MSSB. (*Id.*).

Ariz. at 270, 693 P.2d at 925 (internal quotation marks and citation omitted).

### 1. A.R.S. § 33–814

§ 33–814(A) describes the process for recovery of a deficiency after a trustee's sale in Arizona. Under that provision, "an action may be maintained to recover a deficiency judgment" within 90 days of a trustee's sale. The court determines the total amount owed to the lender as of the date of sale and subtracts either the fair market value or the sale price of the property, whichever is greater. The debtor can ask the court to determine the fair market value. § 33–814(G) states that "no action may be maintained to recover any difference between the amount obtained by sale and the amount of the indebtedness and any interest, costs and expenses" if the subject property is a qualified property.

Plaintiff argues § 33–814(G)'s "no action" refers to any attempt to take additional collateral after a trustee's sale, with or without judicial intervention. Defendant argues the term "action" is limited to a judicial proceeding, and, since the ACA and PSA are self-executing, no judicial proceeding is necessary for Defendants to take the brokerage account.

Taking § 33–814 as a whole, the Court finds the term "action" refers only to the "action" set out in § 33–814(A). That subsection begins by authorizing "an action ... to recover a deficiency judgment" and continues to lay out the proper judicial procedure "in any such action". It goes on to permit the judgment debtor to file an application for a fair market value determination "in the action for a deficiency judgment or in any other action on the contract ..." It also requires notice be "given to all parties to the action." It is clear from this language that the "action" set out in § 33–814(A) is a specific judicial proceeding.

It is also clear that the following subsections refer back to § 33–814(A) when referring to an "action". § 33–814(C) addresses a lender's ability to recover a deficiency from a person who is not the trustor, which must be "determined pursuant to subsection A ...." "If any such action [for the recovery of a deficiency] is commenced" it is subject to the time limitations set out in §§ 33–814(A) and (B). Similarly, § 33–814(D) states that "if no action ... for a deficiency judgment" is brought with those time limits, the debt will be deemed fully satisfied.

Arriving finally at the disputed subsection, § 33–814(G), states that "no action may be maintained to recover any difference between the amount obtained by sale and the amount of the indebtedness ..." Because every other reference to an "action" in § 33–814 refers back to subsection A, it is also clear that this subsection's "action" refers to subsection A. In addition, subsection A begins by creating an exception for subsection G to its authorization of "an action ... to recover a deficiency judgment."

 Reading § 33–814 as a whole and for its plain meaning, it is clear that subsection G prohibits only actions to recover deficiency judgments as defined in subsection A. The procedure set out in subsection A is clearly a judicial procedure, and, under the terms of the PSA and ACA, Defendants would not need to resort to a judicial procedure in order to take control of Plaintiff's brokerage account. Therefore, Defendants could proceed against the brokerage account as collateral pledged in addition to the property.

### 2. A.R.S. § 33–729(A)

§ 33–729(A) states that "if a mortgage is given to secure the payment of the balance of the purchase price, or to secure a loan to pay all or part of the purchase price" on

a qualified property, then (1) a lien of judgment in foreclosure can't "extend to any other property", (2) general execution can't issue to enforce the judgment, and (3) "the judgment may not otherwise be satisfied out of other property of the judgment debtor". These provisions may not be waived.

■ The plain language of the statute makes clear that if Defendants choose to judicially foreclose, the resulting judgment is limited to the underlying qualifying property. However, Defendants may still act on any remaining pledged security. Such an action is not taken to satisfy the judgment because the pledged security may be acted on without a judgment, either before or after the judicial foreclosure. *See In re Shannon*, 179 Ariz. 52, 66, 876 P.2d 548 (1994) (quoting *Rager v. Superior Coach Sales & Serv.*, 110 Ariz. 188, 191, 516 P.2d 324 (1973) (" 'Satisfaction' is a technical term, and in its application to a judgment it means the payment of the money due on the judgment, which must be entered of record, and nothing but this is a legal satisfaction of the judgment.")).

### 3. CONCLUSION

As discussed above, neither of Arizona's two anti-deficiency statutes preclude Defendants from acting against the brokerage account in the event of default. Plaintiff provides no other basis for invalidating his pledge of the brokerage account, and, as discussed below, both the legislature's declared intent and case law from states with similar anti-deficiency provisions support the Court's interpretation of the statutes.

### B. LEGISLATIVE INTENT

Plaintiff relies heavily on the legislative intent behind Arizona's anti-deficiency statutes to support his reading of those statutes. However, the Court's examination of the record pertaining to the legislature's intent reveals just the opposite-permitting borrowers to pledge and lenders to act on additional pledge collateral is consistent with the purpose of Arizona's anti-deficiency statutes.

In *Baker v. Gardner*, 160 Ariz. 98, 770 P.2d 766 (1989), the Arizona Supreme Court decided "whether the 'anti-deficiency' statute, A.R.S. § 33–814(E) [3], limits the trust deed beneficiary to selling the secured property to satisfy the debt or if A.R.S. § 33–722 allows the beneficiary to waive the security and bring an action for the unpaid balance of the promissory note." The court decided § 33–814(E) trumped § 33–722 where the trust property is a qualifying property. *Id.* at 104, 770 P.2d 766. In reaching its conclusion, the court considered the legislative intent behind the anti-deficiency statute and read "both anti-deficiency statutes . . . as evincing the legislature's desire to protect certain homeowners from the financial disaster of losing their homes to foreclosure plus all their other nonexempt property on execution of a judgment for the balance of the purchase price." *Id.* at 101, 770 P.2d 766.

Allowing borrowers and lenders to arrange for additional collateral to secure a loan for a qualifying property does not frustrate this objective because it does not expose the borrower to unknown and unending liability. At the outset, the borrower knows the extent of his or her liability on the loan, and, at the default, the lender is limited to recovering only the pledged assets and cannot reach any other nonexempt property. And while the Arizona Supreme Court also stated the legislatures intent in stronger terms—the abolition of personal liability—pledging additional collateral does not run afoul of this formulation either. *Id.* at 103, 770

---

3. § 33–814(E) has now been re-numbered as § 33–814(G).

P.2d 766. Personal liability is unlimited, and the legislature intended only to abolish this unlimited liability that previously followed default on a mortgage for a qualifying property. Additional pledged collateral exposes the borrower to limited liability, and the legislature did not intend to affect this kind of liability.

This conclusion is reinforced by the Arizona Court of Appeals reasoning in *Helvetica Servicing, Inc. v. Pasquan,* 229 Ariz. 493, 277 P.3d 198 (2012). In that case, the court addressed the legislative intent behind the anti-deficiency statutes and characterized it, in part, as an attempt to place the risk of inadequate security on lenders. *Id.* at 496, 277 P.3d 198. "It is intended to discourage purchase money lenders from over-valuing real property by requiring them to look solely to the collateral for recovery in the event of foreclosure." *Id.*

Again, allowing borrowers to offer additional collateral does not frustrate this objective. The property is valued at the beginning, and the lender makes its decision then as to how much collateral is necessary. Later, if there's a default, the lender is held to that initial assessment and cannot reach beyond the collateral offered. Here, the parties agreed at the outset on the value of the home and collateral necessary to secure it. If it turns out the collateral is not sufficient to satisfy the debt, Defendants will bear that risk and be stuck with the difference. This is what the legislature intended.

## C. OTHER AUTHORITY

The state courts for Alaska and California have considered similar situations construing similar statutes and permitted additional collateral for properties otherwise immune from deficiency judgments.

The Supreme Court of Alaska considered the reach of its anti-deficiency statute[4] in *Hull v. Alaska Fed. Sav. & Loan Ass'n of Juneau,* 658 P.2d 122 (1983). Specifically, the question before the court was whether retention by the lender of two pledged savings accounts after a non judicial foreclosure was proper under the anti-deficiency statute. *Id.* at 123. The court concluded that the statute did not bar the lender from holding on to the additional collateral. *Id.* The court reasoned holding the two pledged accounts did not violate the statute because the statute only barred in-court proceedings or litigation after the non judicial foreclosure and retention of additional security did not fall within this definition. *Id.* at 125.

California's anti-deficiency statute[5] also does not prevent parties arranging for additional security on properties otherwise covered. In *Hatch v. Security–First Nat. Bank of L.A.,* 19 Cal.2d 254, 259, 120 P.2d 869 (1942), the plaintiffs case argued a lender who sold the property after default could not proceed against any additional pledged collateral until it sought a judicial deficiency determination. The court held the lender was not required to go through

4. "When a sale is made by a trustee under a deed of trust ... no other or further action or proceeding may be taken nor judgment entered against the maker or the surety or the guarantor of the maker, on the obligation secured by the deed of trust for a deficiency." AS § 34.20.100

5. "No deficiency judgment shall lie in any event after a sale of real property or an estate for years therein for failure of the purchaser to complete his or her contract of sale, or under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property or estate for years therein, or under a deed of trust or mortgage on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of that dwelling occupied, entirely or in part, by the purchaser ..." Code of Civil Procedure § 580b.

this procedure and could proceed directly against the additional collateral because the section setting out the deficiency judgment procedure referred only to "money judgments", which refers to a personal judgment for the unpaid balance. *Id.* at 261, 120 P.2d 869.

In *Redingler v. Imperial Sav. & Loan Ass'n of the North,* 47 Cal.App.3d 48, 120 Cal.Rptr. 575 (1975), the California Court of Appeal again considered whether § 580b prohibits a lender from realizing an additional security. The plaintiff in this case argued that, since his home had already been foreclosed upon, the lender had no right to proceeds from a fire insurance policy that covered the property. *Id.* at 50, 120 Cal.Rptr. 575. The court, applying previous cases discussing commercial properties, set out the rule that § 580b does not prevent a lender from acting on additional collateral. *Id.* The court went on to hold that, since the lender made only a partial credit bid at the foreclosure sale, it was entitled to the insurance proceeds as additional security on the property. *Id.*

### III. CONCLUSION

Plaintiff pledged his brokerage account as additional collateral for a loan of the full purchase price of his home. He now seeks unlimited access to that account by arguing that, in the event of default, any attempt to retain the account would violate Arizona's anti-deficiency laws. Having read the plain language of those statutes, considered the legislative intent behind them, and judicial interpretations of similar statutes, the Court finds §§ 33–814(G) and 33–729 do not operate to preclude a lender from acting on additional collateral offered at the outset to secure the purchase of a qualifying property. Accordingly, Plaintiff should be held to his pledge of the brokerage account, and summary judgment will enter in favor of Defendants.

**IT IS ORDERED** granting summary judgment to Defendants as to all claims.

**IT IS FURTHER ORDERED** there being no issues remaining, the Clerk of Court shall enter judgment and close this case.

### ORDER

After hearing oral argument and taking additional briefing on the matter, the Court entered summary judgment against Plaintiff on May 11, 2012. (Doc. 27). Thereafter, the Clerk of Court entered judgment against Plaintiff. (Doc. 28). Pending now before the Court is Plaintiff's Motion for New Trial and Motion to Certify Question to Arizona Supreme Court, (Doc. 30), and Defendants' to Alter or Amend the Judgment. (Doc. 34). For the reasons discussed below, the Court will deny Plaintiff's motion, and deny in part and grant in part Defendants' motion.

### I. Background

When Plaintiff bought his home, he paid no money down and financed the purchase through a promissory note made out to Morgan Stanley Credit Corporation secured by a deed of trust for the home and funds in his brokerage account. (Doc. 1–4). Plaintiff sought a declaration that Arizona's anti-deficiency laws prevent Defendants from holding his brokerage account as collateral.

At the outset, Plaintiff sought a preliminary injunction releasing all of the funds in his brokerage account to him. (Doc. 1–4 at 2–14). The Court granted Plaintiff's request in part and released all funds in the account over $100,000. (Doc. 18). At the parties' request, the action proceeded directly to summary judgment without discovery. (Doc. 16). Prior to ruling on summary judgment, the Court asked the parties their positions on certifying the question presented to the Arizona Su-

preme Court. Plaintiff argued against certification, and the Court ruled without certifying the question.

The Court held that, in a non judicial foreclosure under A.R.S. § 33–814, "Defendants could proceed against the brokerage account as collateral pledged in addition to the property[,]" and that, under A.R.S. § 33–729(A), Defendants could judicially foreclose and still proceed against the brokerage account. (Doc. 27).

## II. Plaintiff's Motion for New Trial

■ Plaintiff makes this motion as a motion for new trial under Fed.R.Civ.P. 59(a), but no trial occurred. This motion is properly considered under Fed.R.Civ.P. 59(e) and is in essence a motion for reconsideration. Such a motion offers an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enter., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir.2000). Reconsideration under Rule 59(e) is appropriate "if (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." *S.E.C. v. Platforms Wireless Intern. Corp.*, 617 F.3d 1072, 1100 (9th Cir.2010) (citing *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009)).

Plaintiff seems to argue that the Court clearly erred by either not certifying the question presented by this case to the Arizona Supreme Court or resolving the question in Morgan Stanley's favor. (Doc. 30 at 2:8–3:9). The Court's decision not to certify the question cannot be clear error because the decision whether to certify a question to the state supreme court is left to a district court's discretion. *White v. Celotex Corp.*, 907 F.2d 104, 106 (9th Cir. 1990).

## III. Defendants' Motion to Alter or Amend the Judgment

Defendants ask the Court to alter or amend the judgment to dissolve the preliminary injunction releasing funds from the brokerage account to Plaintiff. (Doc. 34). They also ask the Court to order Plaintiff to return the funds already released. This motion is also made pursuant to Rule 59(e), and the standard discussed above applies.

■ Defendants are correct that the judgment should reflect dissolution of the preliminary injunction. Dissolution of a preliminary injunction is appropriate where there is a significant change in the facts or law. *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir.2000) (citing *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992)). The significant change here is that the Court entered judgment on the merits in favor of Defendants.

With the dissolution of the preliminary injunction, Defendants may prevent Plaintiff from withdrawing any funds from the brokerage account until it reaches the floor amount for withdrawal set by the PSA. The Court will not order Plaintiff to replace the funds already taken.

## IV. Conclusion

The Court will deny Plaintiff's Motion for New Trial because Plaintiff has not demonstrated that the Court's decision not to certify the question to the Arizona Supreme Court was in clear error. The Court will grant in part and deny in part Defendants' Motion to Alter or Amend the Judgment. The Court will dissolve the preliminary injunction but not require Plaintiff to replace the funds already released. Accordingly,

**IT IS ORDERED** denying Plaintiff's Motion for New Trial. (Doc. 30).

**IT IS FURTHER ORDERED** denying in part and granting in part Defendants' Motion to Alter or Amend the Judgment. (Doc. 34). The Court will dissolve the preliminary injunction but not require Plaintiff to replace the funds already released.

**IT IS FURTHER ORDERED** granting the Stipulated Motion to Strike Plaintiff's Response to Motion for Attorneys' Fees. (Doc. 36). The Clerk of Court shall strike Document 33 from the record.