NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

_____

NORTHERN TRUST, NA, a national banking association,
*Plaintiff/Appellee*,

*v.*

JEFFREY D. WAREING and JULIE A. WAREING, husband and wife,
*Defendants/Appellants*.

No. 1 CA-CV 15-0379
FILED 12-8-2016

_____

Appeal from the Superior Court in Maricopa County
No. CV 2011-011851
The Honorable Douglas Gerlach, Judge

**REVERSED AND REMANDED**

_____

COUNSEL

Berens, Kozub, Kloberdanz & Blonstein, PLC, Scottsdale
By Daniel L. Kloberdanz
*Counsel for Defendants/Appellants*

Gallagher & Kennedy PA, Phoenix
By Todd A. Burgess, Hannah H. Porter
*Counsel for Plaintiff/Appellee*

---

**MEMORANDUM DECISION**

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Peter B. Swann joined.

---

**O R O Z C O**, Judge:

¶1　　　　Jeffrey and Julia Wareing (the Wareings) appeal the superior court's grant of summary judgment in favor of Northern Trust, N.A. (NT). For the following reasons, we reverse and remand to the superior court to enter judgment in favor of the Wareings.

## FACTS AND PROCEDURAL HISTORY

¶2　　　　In May 2005, the Wareings purchased a vacant lot that was less than two and one-half acres in Scottsdale, Arizona, to build a residence (the Property). They borrowed approximately $1.2 million from NT in December 2006, for the construction of the home and granted NT a first position deed of trust to secure the loan (the Senior Deed). After construction was completed in 2008, the Wareings used the Property as their primary residence.

¶3　　　　In April 2008, the Wareings borrowed an additional $400,000 from NT as an equity line of credit (the ELOC Loan). The terms of the ELOC Loan were memorialized in the Northern Equity Credit Line Agreement and Disclosure (the Agreement or Promissory Note). NT secured the ELOC Loan by a deed of trust against the Property, which was recorded in May 2008 (the Junior Deed).

¶4　　　　The Wareings defaulted on both loans and NT foreclosed on its Senior Deed. The Property was sold at a trustee's sale in June 2011. At the trustee's sale, NT acquired a clear title to the Property for a credit bid of the amount owed on the Senior Deed. No surplus proceeds from the sale were left to be applied to the ELOC Loan, although NT's own appraisal in February 2011, stated the fair market value of the Property was $1,710,000.

¶5　　　　NT filed lawsuit for breach of contract to recover the balance owed on the ELOC Loan. While the case was pending, NT sold the Property for $1.5 million - approximately $100,000 less than the total amount owed on both loans combined. Both parties filed motions for summary judgment. The Wareings argued NT was foreclosed from

collection on the ELOC Loan because the sale of their Property satisfied the entirety of their debt to NT, and that to hold otherwise would result in a "huge windfall" for NT. In its motion for summary judgment, NT maintained that the ELOC Loan was a separate debt that was not satisfied by the earlier trustee's sale of the Property. The superior court granted judgment in favor of NT.

¶6 The Wareings timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes (A.R.S.) sections 12-120.21.A.1 and -2101.A.1 (West 2016).[1]

## DISCUSSION

¶7 We review the grant of summary judgment and legal conclusions de novo and view the evidence in the light most favorable to the party against whom summary judgment was granted. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003). On appeal, both parties agree there are no genuine issues of material fact.

¶8 The Wareings argue that the anti-deficiency provisions contained in A.R.S. §§ 33-729.A and -814.G bar NT's legal action because (1) the Property securing both of NT's loans was protected by the anti-deficiency statutes; (2) the Property was sold in a *non-judicial* foreclosure process, which discharged the Wareings' personal liability even on the non-purchase money loan secured by the Junior Deed, pursuant to section 33-814.G; and (3) NT could have elected to treat its Senior Deed as a mortgage by using the judicial foreclosure method, thereby triggering the purchase money limitation of § 33-729.A, and permitting NT to treat its Junior Deed as a mortgage and sue directly on the Junior Deed as a non-purchase money loan.

¶9 NT counters that NT's lawsuit is not a deficiency action, but a simple action for breach of contract, because (1) the trustee's sale extinguished NT's Junior Deed by operation of law and turned its Agreement with the Wareings into an unsecured obligation; and (2) NT's foreclosure of its Senior Deed is not, in any way, related to its enforcement of the Agreement, rendering the anti-deficiency statutes and A.R.S. § 12-1566 inapplicable.

---

[1] We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

I.      **Applicability of Anti-Deficiency Statutes**

¶10      The anti-deficiency statutory scheme enacted in A.R.S. §§ 33-814.G (deeds of trust) and -729.A (purchase money mortgages), "prohibit[s] a deficiency judgment after sale of a parcel of 'property of two and one-half acres or less which is . . . utilized for either a single one-family or single two-family dwelling.'" *Mid Kan. Fed. Sav. & Loan Ass'n of Wichita v. Dynamic Dev. Corp.*, 167 Ariz. 122, 126 (1991) (*quoting* A.R.S. §§ 33-729.A, -814.G).

¶11      Neither party disputes the Property is located on two and one-half acres or less and was utilized as a single one-family dwelling. Therefore, if the Property was sold pursuant to a trustee's power of sale, it is protected by the anti-deficiency statute, and "*no action* may be maintained to recover *any difference* between the amount obtained by sale and the amount of the indebtedness and any interest, costs and expenses." A.R.S. § 33-814.G (emphasis added). Additionally, the anti-deficiency protections contained in section 33–814.G apply to "*deeds of trust* that are foreclosed by *trustee's sale*, *regardless* of whether they represent purchase money obligations." *Id.* (emphasis added).

¶12      Here, because NT foreclosed on its Senior Deed utilizing a trustee's sale, section 33–814.G governs, and it cannot bring a deficiency action regarding the outstanding balance on its Junior Deed. *See Baker v. Gardner*, 160 Ariz. 98, 107 (1988) ("Where the creditor chooses non-judicial foreclosure, he cannot obtain a deficiency judgment if the collateral is *within the class* protected by the deed of trust anti-deficiency statute.") (emphasis added).

¶13      Additionally, pursuant to our supreme court's decision in *Baker*, NT cannot waive the security on the Junior Deed and sue on the ELOC Loan. *Id.* at 104. In *Baker*, two creditors held a deed of trust to the same property, and neither had control over the other's decisions. *Baker*, 160 Ariz. at 99. The borrower defaulted on both loans and the first creditor foreclosed on its senior deed of trust. In foreclosing on the senior deed of trust, it extinguished the second creditor's junior deed of trust, converting the second creditor's debt from a secured to an unsecured obligation. Prior to the trustee's sale, the second creditor, Baker, elected to forgo his right to foreclose on his junior deed and filed a lawsuit to collect on the promissory note. The supreme court, however, precluded the collection action, finding that Baker's loan was governed by the anti-deficiency protections contained in sections 33-814.G and 33-729.A. *Id.* at 104.

¶14        The facts in *Baker* are almost identical to the facts in this case, except that NT is the sole creditor and held both the Senior and Junior Deeds.  However, NT argues that *Baker* does not apply to this case because Baker filed a lawsuit on the promissory note while he still had a choice to foreclose on the junior deed of trust; in contrast, NT did not seek to enforce its rights under the ELOC Loan until after those rights were extinguished in the trustee's sale.  We disagree.

¶15        In *Baker*, the supreme court stressed that it was the nature of the property, not Baker's timing of his collection action, that triggered the anti-deficiency protections.  The court reasoned that "the legislature would not have protected homeowners from deficiency judgments but still permitted the holder of a mortgage or deed of trust to obtain essentially the same result by waiving the security and bringing action on the note.  This statutory construction seems inconsistent with the patent legislative objective."  *Id.* at 101–02; *see Mid Kan.*, 167 Ariz. at 126 ("[T]he lender should not be allowed to circumvent the anti-deficiency statute by electing to sue the debtor on the note, thereby realizing any difference between the value of the real property and the amount owed on the debt.").  Here, allowing NT to take advantage of its position of control over both deeds and argue it had no choice but to collect on the Promissory Note, because its Junior Deed was extinguished in a Trustee's sale initiated by NT, would run afoul of the legislative intent in enacting the anti-deficiency statutes.

¶16        Moreover, the Arizona legislature "designed [the anti-deficiency statutes] to temper the effects of economic recession on mortgagors by precluding artificial deficiencies resulting from forced sales," and intended to "put the burden on the lender or seller to fairly value the property when extending the loan, recognizing that consumers often are not equipped to make such estimations."  *Mid Kansas*, 167 Ariz. at 127-28 (internal quotations and citations omitted).  NT is in the business of calculating risks of loans; indeed, prior to making the ELOC Loan in 2008, NT hired an appraiser who appraised the Property at $3.2 million.

¶17        The Arizona legislature envisioned this and similar scenarios and designed the anti-deficiency statutes as a balance between lender's and debtor's rights. *See id.*, §§ 33-814.G, -729.A.  For example, the anti-deficiency statutory scheme affords the lender protections and choices to recover a deficiency judgment where the lender secured its loan by a non-purchase money deed of trust described in § 33-814.G, as NT did in this case.  A lender has an option to either foreclose on its deed of trust in a non-judicial sale, or avail itself of a judicial sale, which also protects the debtor by

allowing him to exercise his statutory redemption rights. *Id.* at 126-27; *Baker*, 160 Ariz. at 107.

¶18        However, NT chose not to avail itself of these statutory protections, even though NT's own appraiser valued the Property higher than both loans combined, just months before the trustee's sale. NT could have judicially foreclosed on the Senior Deed which would have allowed it to recover a deficiency on both the Deeds. However, it did not do so.

¶19        NT also argues that *Baker* and § 33-814.G do not apply because NT's Junior Deed was not a purchase money deed of trust, but merely a line of credit extended after the home was already purchased. In contrast to NT's position, the supreme court explained in *Baker* and *Mid Kansas* that § 33–814.G "applies to deeds of trust that are foreclosed by trustee's sale, *regardless of* whether they represent purchase money obligations." *Mid Kan.*, 167 Ariz. at 126 (emphasis added); *Baker*, 160 Ariz. at 106 ("[T]he deed of trust anti-deficiency statute is not limited to purchase money collateral."). Therefore, NT is barred by § 33-814.G from recovering any unpaid balance on its Promissory Note.

¶20        NT further contends that a junior lien holder whose security interest is extinguished in a non-judicial sale can bring an independent action for breach of a non-purchase money promissory note pursuant to *Southwest Savings & Loan Association v. Ludi*, 122 Ariz. 226 (1979). However, *Ludi* is distinguishable from *Baker* in two important aspects: (1) "the lender in *Ludi* had used a *judicial proceeding* to foreclose its first [purchase money mortgage] before bringing an action on the second, non-purchase money obligation," *Resolution Tr. Corp. v. Segel*, 173 Ariz. 42, 46 (App. 1992), and (2) section 33-729.A, which applied in *Ludi,* expressly refers only to purchase money mortgages, while section 33-814.G, applied in *Baker*, extends to both purchase as well as non-purchase money deeds of trust. (First emphasis in original). *See Ludi*, 122 Ariz. at 228. After *Baker, Ludi* applies to deeds of trust and mortgages on properties not protected by the anti-deficiency statutes. *Baker*, 160 Ariz. at 104.

¶21        As a result, we reverse the superior court's grant of summary judgment to NT and remand for the superior court to enter judgment in favor of the Wareings. Because we are remanding based on the anti-deficiency statute, we need not address the Wareings defenses of merger, unjust enrichment, equity and mitigation of damages or whether the trial court erred in not considering the documents in the Reply to the motion for summary judgment.

## II.  Attorney Fees and Costs Incurred on Appeal

**¶22**　　　Both parties requested an award of attorney fees and costs on appeal pursuant to Arizona Rule of Civil Appellate Procedure 21 and A.R.S. § 12-341.01.  Section 12-341.01.A provides a court with discretion to award reasonable attorney fees to a prevailing party "[i]n any contested action arising out of a contract."  *Id*.  As the Wareings are the prevailing party on appeal, we award them a reasonable amount of attorney fees and costs incurred on appeal upon compliance with ARCAP 21.

### CONCLUSION

**¶23**　　　For the foregoing reasons, we reverse the superior court's grant of summary judgment to NT, and remand to the superior court to enter judgment in favor of the Wareings.



AMY M. WOOD • Clerk of the Court
FILED:  AA